The opinion of the Court was drawn up by
Davis, J.
This is an action of trespass qu. cl., involving the title to real estate. Both parties claim, through mesne conveyances, under Shubael Baker and wife.
The defendant derived his title from Hayward, to whom Baker and wife convoyed, Sept. 24, 1832. The deed described a piece of land from lot number 39, one half the width of said lot, on north side, " and, continuing,’from the west side, one half the width of said lot, so far as will make precisely twenty acres.” Immediately after the deed was given, Baker and Hayward, in pursuance of a previous agreement, went upon the lot with surveyors, and had the premises conveyed run out, and the lines and corners fixed by spotted trees and stakes.
The plaintiff claims through James Shaw, to whom Baker and wife deeded Sept. 12, 1833. The deed to bim described ten or twelve acres, more or less, from the same lot, number 39, being the remainder of the north half of said lot, bounded on the east by "the west line of said Hayward’s land.”
At the time this deed was given, the west line of Hayward’s land had been run.out, and marked; and Shaw and Hayward recognized that as the true line, each cutting wood up to it on his side of it. And, though there was no fence upon the line, and no occupation except by cutting wood, the owners upon both sides continued to acquiesce in the line originally established until 1857.
In 1833, or 1834, Hayward had a suit with Bacon, who owned lot number 40, on the north, in regard to the division line between them. That resulted in changing the north line of lot 39, and locating it four rods further north. This increased the width of the lot, in consequence of which *30 Hayward had more than half the width of it. But Hayward voluntarily relinquished two rods on the south side of his premises to the owner of the south half of the lot. He still had more than twenty acres left, as his lot was two rods wider than before. But Shaw, who then owned the other part of the north half of the lot, was no party to the controversy with Bacon, and toot no part in the matter, except, as a result of it, to give up two rods in width on the south side, and receive four rods in width on the north side of his land. The division line between him and Hayward was not changed. The occupation continued as before, by the parties and their grantees, until 1857.
The case at bar is in all respects within the principles, established by the case of Moody v. Nichols, 16 Maine, 23.
The parties agreed upon 'and mai’ked out a line of boundary immediately after the defendant’s deed was given, and possession was given in accordance with it. The "west line” of it, by which the land deeded to Shaw in 1833, was bounded, was an established, visible monument, well known to the parties. Shaw himself assisted in fixing and marking it, when Hayward’s land was run out in 1832. It is clear that in the deed to Shaw, the parties intended, not an imaginary west line of Hayward’s land, but the well known marked line as then existing.
And, after an acquiescence by all the parties in a line so established for a length of time sufficient to give a title by disseizin, it will not be disturbed,though it does not appear that the occupation has been such as, aside from the marking of the line, would amount to a continuous disseizin for that length of time. Plaintiff nonsuit.
Tenney, C. J., Rice, May, Goodenow, and Kent, JJ., concurred.