## MARY O'DONNELL *vs.* JAMES H. PENNEY.

When a boundary line between two adjoining estates has been recognized and acquiesced in by the owners of both for a length of time equal to that prescribed by the statute of limitations as barring a right of entry, the owners of both estates are precluded from denying it to be the true line of boundary.

TRESPASS AND EJECTMENT. Heard by the court, jury trial being waived.

*August* 6, 1890. MATTESON, J. This is an action of trespass and ejectment heard by the court, jury trial being waived. It is brought to recover possession of a small, triangular parcel of land situated on the easterly side of Crout Street, in Providence, and containing 32.59 square feet. This triangular parcel of land is a part of lot No. 18, as platted on a plat entitled "Plat of House Lots owned by Charles Potter, on Federal Hill, made July 1, 1856," and recorded in the land records in Providence, in Plat Book No. 4, page 56. Said lot No. 18 is bounded southerly on Atwell's Avenue, on which it measures 25.075 feet, and, holding that width throughout, extends back therefrom northerly 47.135 feet to lot No. 16 on said plat, owned by the plaintiff, and is bounded easterly by lot No. 19 on said plat, and westerly by Crout Street. As platted, said lot No. 18 was but 45 feet in depth, but subsequently the lay-out of Atwell's Avenue was narrowed, and the

land not included in the lay-out in front of lot No. 18 was thrown into that lot. Said lot No. 16, as platted on said plat, is bounded northerly on Trainor Street, on which it measures 25.075 feet, and, holding that width throughout, extends back therefrom southerly 45.135 feet to lot No. 18, owned by one Margaret Wafer, the defendant's lessor, and is bounded easterly on lot No. 17 on said plat, and westerly on Crout Street. The measurements above given were taken, not from the original plat, but from a plat of a recent survey of the lots used at the hearing of the case. The triangular parcel of land sued for had been for some time prior to June 18, 1864, included within the inclosure of the plaintiff; the division fence between her estate and that of the said Margaret Wafer being upon the southerly line of said triangular parcel. When this fence was originally built, or what were the circumstances attending its building, the testimony does not show. Bridget Slavin owned the plaintiff's estate from June 18, 1864, until April 20, 1870, when she and her husband conveyed it to Thomas O'Donnell, who was the plaintiff's husband, and who devised it to the plaintiff by his last will and testament. Bridget Slavin testified to the location of the fence upon the line named during her ownership of the estate. Nellie O'Donnell, daughter of the plaintiff, testified that the fence was on the line mentioned at the time her father purchased the property, and had not been disturbed until about eight years before the hearing, when the old fence was taken away, and a new one built the same day on the same line, which had remained upon the line until torn down by one John Wafer, son of said Margaret Wafer; that Catharine McCaffrey, the purchaser of said lot No. 18 from Charles Potter, the original owner of the platted lots, and who owned that lot from August 26, 1856, to September 19, 1887, and her father, Thomas O'Donnell, always thought the fence was in the right place, and on the line between the two estates. The plaintiff testified that the fence was on the line named at the time of her husband's purchase of the property, and no change had been made in its position; that the old fence had been taken down about eight years prior to the hearing, and a new one built upon the same line, which remained until it was removed by said John Wafer, in August, 1889; that her husband and herself had always claimed to that line; that her husband died

in August, 1887, and that both he and Mrs. McCaffrey believed the fence was on the proper line. James Cavanaugh testified that he built the new fence eight years or so before the hearing; that Mrs. McCaffrey put down the stubs on the line for him to build the fence by, but that he, by direction of Mrs. McCaffrey, who was apprehensive lest she should encroach upon her neighbor's lot, built the fence three inches southerly from the line of the former fence, on the McCaffrey side.

The defendant offered no testimony in rebuttal on these points of that produced by the plaintiff. For the defendant, John Wafer testified that his mother, Margaret Wafer, bought her estate in July, 1889; that he cut down the fence August 23, 1889, and that the defendant's carriage house extends three or four inches beyond the line from which the fence was removed.

The plaintiff claims the right to recover, because the line from which the fence was removed had been recognized and acquiesced in by the owners of the two estates, for at least twenty-five years before the removal of the fence, as the true dividing line between the estates.

There are numerous decisions to the effect that, when the boundary line between adjacent lands is in dispute or uncertain, the owners may establish a division line between them by express parol agreement, and that, if such agreement is immediately executed and followed by actual possession according to such line, the agreement is binding and conclusive, and such division line shall not be disturbed, though it may afterwards appear that it was not the true line according to the paper title. *Wakefield* v. *Ross*, 5 Mason, 16, 23; *Kellogg* v. *Smith*, 7 Cush. 375, 380; *Grey* v. *Berry*, 9 N. H. 473, 477; *Orr* v. *Hadley*, 36 N. H. 575, 578; *Jackson* v. *Dysling*, 2 Caines, 198, 201; *Jackson* v. *Ogden*, 7 Johns. Rep. 238, 245; *Kipp* v. *Norton*, 12 Wend. 127, 130; *Lindsay* v. *Springer*, 4 Harring. Del. 547, 549, 550; *Perkins* v. *Gay*, 3 Serg. & R. 327, 331; *Blair* v. *Smith*, 16 Mo. 273, 281; *Sneed* v. *Osborne*, 25 Cal. 619, 626; *Gwynne* v. *Schwartz*, 9 South East. Reporter, 880, 885. Such agreement is not regarded as passing any real estate, but merely as defining the line between their respective grants, and hence is not within the statute of frauds. *Hagey* v. *Detweiler*, 35 Pa. St. 409, 412; *Lindsay* v. *Springer*, 4 Harring. Del. 547, 550;

*Turner* v. *Baker*, 64 Mo. 218, 239, 240; *Smith* v. *Hamilton*, 20 Mich. 433, 438; *Terry* v. *Chandler*, 16 N. Y. 354, 355, 356; *Blair* v. *Smith*, 16 Mo. 273, 281. And even when no express agreement is shown, the authorities are numerous that acquiescence in a boundary line, assumed or established for a period equal to that prescribed in the statute of limitations to bar an entry, is conclusive evidence of ·such an agreement, and will preclude the parties from setting up the claim that the line so acquiesced in is not the true boundary. *Adams* v. *Rockwell*, 16 Wend. 285, 302; *Smith* v. *McAllister*, 14 Barb. S. C. 434, 436, 437, 438; *Rockwell* v. *Adams*, 7 Cow. 761, 762; *Kipp* v. *Norton*, 12 Wend. 127; *Faught* v. *Holway*, 50 Me. 24; *Gilchrist* v. *McGee*, 9 Yerg. Tenn. 455; *Sneed* v. *Osborne*, 25 Cal. 619, 626; *Columbet* v. *Pacheco*, 48 Cal. 395, 397; *Turner* v. *Baker*, 64 Mo. 218, 243; *Gwynne* v. *Schwartz*, 9 South East. Reporter, 880, 885, 886. In *Baldwin* v. *Brown*, 16 N. Y. 359, the court denies the soundness of the theory that a parol agreement, either actual or supposed, lies at the foundation of the rule, and holds that the supposition of such an agreement, in cases of long acquiescence, is entirely superfluous. The court says: "The acquiescence in such cases affords ground, not merely for an inference of fact to go to the jury as evidence of an original parol agreement, but for a direct inference as to the true boundary line. It is held to be proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary. Unless the acquiescence has continued for a sufficient length of time to become thus conclusive, it is of no importance. . . . In all cases in which practical locations have been confirmed upon evidence of this kind, the acquiescence has continued for a long time, rarely less than twenty years." This rule appears to have been adopted as a rule of repose, for the purpose of quieting titles, and preventing the uncertainty and confusion, and consequent litigation, which would be likely to result from the disturbance of boundary lines so long established. *Baldwin* v. *Brown*, 16 N. Y. 359, 363, 364; *McCormick* v. *Barnum*, 10 Wend. 104, 109; *Smith* v. *McAllister*, 14 Barb. S. C. 434, 437; *Jackson* v. *Van Corlaer*, 11 Johns. Rep. 123, 127; *Kellogg* v. *Smith*, 7 Cush. 375, 381.

In the case at bar, as we have seen, the testimony does not show how or by whom the line in question was established, whether by

express agreement between the owners of both lots, or by one with the acquiescence merely of the other. It does not appear that any monuments defining the lot lines upon the plat by which the lots were sold were ever set, and it is not improbable that Mrs. McCaffrey, having purchased lot 18, August 26, 1856, and not being aware of the change in width of the lay-out of Atwell's Avenue, measured back from its northerly line the forty-five feet specified in her deed as the length of the easterly and westerly lines of that lot, and built her fence across the north end of the lot upon the line thus indicated, and that the purchaser of lot 16, nearly two years later, finding the fence so built, acquiesced in the line of it as the division line; but, whatever may have been the origin of the line, the testimony shows that it has been recognized and acquiesced in by the owners of both lots for upwards of twenty-five years as the true dividing line, a period five years longer than that required by Pub. Stat. R. I. cap. 175, § 2, to create a title to real estate by possession, and therefore, following the analogy of the rule adopted in the authorities referred to, which hold that the acquiescence must have continued for a period equal to that prescribed in the statutes of limitation to bar a right of entry, long enough, and five years more than long enough, to preclude the parties from asserting that it is not the true line. We are of the opinion, therefore, that the plaintiff is entitled to recover so much of the parcel of land sued for as lies northerly of a line drawn parallel with, and three inches northerly from, the line represented by the red line upon the plat used at the hearing.

*Arnold Green*, for plaintiff.

*George J. West*, for defendant.