LEONA R. MALONE *vs.* JAY K. O'CONNELL *et al.*

JULY 19, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. This is an action of trespass and ejectment brought by a landowner against the owners of adjoining land to recover possession of a narrow strip of land which the plaintiff was occupying up to a short time before the instant action was brought after the defendants in May 1955 erected a board fence on the edge of the strip nearest plaintiff's house. The case was tried before a justice of the superior court who rendered a decision for the plaintiff. The defendants excepted to the decision and that is the sole basis of their bill of exceptions.

In 1913 Grace Andrews acquired a parcel of land on the easterly side of Cottage street in the city of Newport. Her deed bounded the premises northerly on Catherine street and 70 feet on Cottage street. In 1931 she with two others acquired the premises next southerly of her first purchase on Cottage street. This deed bounded the second parcel 109 feet 6 inches on said street. The total of the deed bounds on Cottage street is 179 feet 6 inches, but the parties agree that the actual measurement of these two parcels on Cottage street is approximately 174 feet. The difference is the subject matter of this controversy.

By 1929 Mrs. Andrews had a wire fence beginning on Cottage street 80 feet southerly from Catherine street and running to the back of her lot. In 1932 she acquired by deed from her cotenants a 10-foot strip off the northerly end of their joint property which tends to indicate that she wished to have a paper title to whatever she was occupying in excess of the property conveyed to her by the first deed, presumably ten feet. She continued to occupy up to this fence and in 1937 she joined in a quitclaim deed of the second parcel to one of the defendants' predecessors in title. This deed bounded the premises conveyed 99 feet 6 inches on Cottage street. In 1941 these premises were conveyed to Frank and Gertrude O'Connell as tenants by the entirety, the survivor of whom in 1955 deeded this property to de-

fendants. All these deeds bounded the premises 99 feet 6 inches on Cottage street.

Mrs. Andrews continued to occupy the first parcel up to the wire fence until her death in 1948 when it passed by her will to her husband who willed it to one who deeded it to the plaintiff. When the plaintiff took possession in 1950 she found the wire fence in substantially the same condition and position as witness Edward King, an employee of Mrs. Andrews' husband, testified it was in from 1929 to Mrs. Andrews' death. Hurricane Carol in 1954 ruined this fence and plaintiff's father removed the debris, but stumps of the posts were left and were clearly visible at the time of the trial.

The plaintiff claimed a paper title to the disputed strip. The trial justice was of the opinion that Mrs. Andrews by joining in the deed of 1937 did not intend to convey this 10-foot strip she had been occupying for a number of years and to which she had acquired a paper title five years before. There is little doubt about her actual intention. Having bought the 10-foot strip she would be unlikely to deed it away. Furthermore, the deed itself refers to the land as being a part of the same property which had been conveyed in the 1931 deed. This recognizes her retention of the 10-foot strip. It is easy to understand why the grantors gave the frontage on Cottage street as 99 feet 6 inches. The original deed to them bounded the property 109 feet 6 inches on Cottage street. It would appear that the conveyancer who drew the quitclaim took the first deed and knowing that the 10-foot strip had been deeded to Mrs. Andrews, he fixed the boundary on Cottage street as 99 feet 6 inches.

The grantee in the 1937 quitclaim deed did not take possession of the disputed strip and neither did anyone holding under him until the board fence was put up, and thus it would appear that the parties construed the deed as not carrying the disputed strip. Under these circumstances we are inclined to agree with the trial justice that the quitclaim

deed did not affect the disputed strip. However, we do not rest our decision on that point because the plaintiff has otherwise proved her title.

The plaintiff next claimed title to the strip by adverse possession. General Laws 1938, chapter 438, §2. The defendants, however, claim that Mrs. Andrews could not hold adversely to her grantee and they cite a long note in 39 A.L.R. 2d beginning at page 353. The general rule there recognized is as stated in the article in 1 Am. Jur., Adverse Possession, §47, p. 818, to the effect that the retention of possession by the grantor is presumed to be in subordination to his grantee, for the grantor is estopped by his deed from claiming that his holding is adverse. But here we have a quitclaim deed which does not estop the grantor from afterwards acquiring a title adverse to the grantee. See article in 19 Am. Jur., Estoppel, §9, p. 606. However, it is recognized in the above article in 1 Am. Jur., §48, p. 819, that it is possible for a grantor to originate adverse possession against his grantee. Such adverse possession is amply proved in this case, since the grantee here did not take possession of the disputed strip, and Mrs. Andrews continued to occupy it, maintained the fence, the vine upon it and the land up to it, as she had previously done.

Assuming that there was a break in Mrs. Andrews' possession caused by the deed of 1937, she occupied this property openly, adversely and continuously from 1937 to 1948, a period in excess of the ten-year statutory period and thus she acquired a title to the strip under the statute.

In 1941 Mrs. Andrews' grantee conveyed the property deeded him in 1937 but she continued to occupy as before until her death in 1948. Thereafter her husband, his devisees and the plaintiff occupied the strip until 1955 when the fence was put up. The occupation of these persons tacked together is much longer than the statutory ten years required and their occupation was certainly continuous,

open and adverse to the defendants and their predecessors in title.

The defendants point out that there was no definite evidence as to "who exercised possession of the strip" from 1948 to 1950, the short period between Mrs. Andrews' death and the acquisition of the property by the plaintiff, but as we have pointed out, in 1950 plaintiff found the fence in the condition and position substantially as witness King described it was in 1948, and there is no doubt that the strip was continuously occupied by Mrs. Andrews and those claiming under her from 1929 to the date the board fence was put up in 1955.

The plaintiff also supports her title by the well-settled rule that, when as here a boundary has been maintained for the statutory period of ten years, such fact is "conclusive evidence" of an agreement that it is the true boundary.

In *O'Donnell* v. *Penney,* 17 R. I. 164, this court stated at page 167: "And even when no express agreement is shown, the authorities are numerous that acquiescence in a boundary line, assumed or established for a period equal to that prescribed in the statute of limitations to bar an entry, is conclusive evidence of such an agreement, and will preclude the parties from setting up the claim that the line so acquiesced in is not the true boundary."

In *Doyle* v. *Ralph,* 49 R. I. 155, and *Di Maio* v. *Ranaldi,* 49 R. I. 204, this court reaffirmed the law laid down in *O'Donnell* v. *Penney, supra.*

In our opinion the evidence introduced at the trial clearly shows that this fence was maintained at the same place for some twenty-six years before the defendants put up the board fence. This makes it unnecessary to consider the statement of the trial justice in his rescript as to what he saw on the view. It thus appears that there was at least one view of the evidence supporting his decision that the plaintiff had title to the disputed strip.

The defendants' exception is overruled, and the case is

remitted to the superior court for entry of judgment on the decision.

FLYNN, C. J., did not participate in the decision.

*Sheffield & Harvey, Ray H. Durfee,* for plaintiff.

*Cornelius C. Moore, Salvatore L. Virgadamo, James E. Murphy,* for defendants.