CHARLES H. ESSEX *et ux. vs.* JOSEPH LUKAS *et ux.*

APRIL 5, 1960.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

458

PAOLINO, J. This is a bill in equity to establish a boundary line, to remove a cloud on title, and for incidental relief. After a hearing in the superior court on amended bill, answer and proof, a final decree was entered denying and dismissing the bill and establishing the true division line. The cause is before us on the complainants' appeal from such decree.

The narrow issue before us relates solely to the location of the true boundary line between the southerly line of complainants' land and the northerly line of land owned by respondents. The complainants assert that the true boundary line is the center line of a certain hedge, while respondents claim that it is the division line which appears on certain surveys and recorded plats. The accuracy of the division line as it appears on the surveys and recorded plats is not questioned by complainants. Nor are they claiming by adverse possession. Their entire case is based on the contention that the hedge, which is located on an area south of the paper line, so called, has been recognized and acquiesced in for at least fifty years by the owners of both adjoining properties as the true boundary line.

On such issue the trial justice found that the boundary line as defined by the hedge had not been acquiesced in by the succeeding owners of respondents' land. On the basis of this finding he decided that the true boundary line was not the hedge or the center line thereof but the line as shown on the surveys and recorded plats. The complainants contend that the decree containing such findings is against the law, the evidence and the weight thereof.

It is well settled that when a boundary line between two adjoining properties has been recognized and acquiesced in by the owners thereof for a length of time equal to that prescribed by the statute of limitations as barring a right of entry, both owners are precluded from denying it to be the true boundary line. *O'Donnell* v. *Penney*, 17 R. I. 164. But it is equally well settled that although the issue of what are the boundaries of land is a question of law, the determination of where such boundaries are is a question of fact. *Di Maio* v. *Ranaldi*, 49 R. I. 204, 206. In a case such as this, depending in the first instance upon the question of whether there has been the required acquiescence, such issue must be resolved before the question of where the true line exists is determined. The acquiescence is also

an issue of fact depending upon the evidence in each case. *Di Maio* v. *Ranaldi, supra; Ungaro* v. *Mete,* 68 R. I. 419, 426.

Therefore the principal issue before us is whether the trial justice was clearly wrong in finding as a fact that there had been no acquiescence by the succeeding owners of respondents' land and that the true boundary line was the same as appears on the surveys and recorded plats. We shall discuss only the evidence which pertains to such issue.

The lots in question are located on the westerly side of Broad street in the city of Cranston. The complainants' house is at 2073 Broad street. The respondents' home is on the adjoining lot at 2079 Broad street, the southerly line of complainants' land being the northerly line of respondents' lot.

The complainants' land was formerly part of a larger piece of land which was owned by a relative of the complainant Mrs. Charles Essex. The relative died on December 25, 1947 and under her will she left her homestead cottage and one half of said larger tract of land to Mrs. Essex. Sometime in 1947 or 1948 a survey of the testatrix's land was made by an engineering company for the purpose of dividing the land. In August 1948 complainants moved into the house located on the portion of the land which had been left to Mrs. Essex. For thirteen years prior thereto they had lived in a house located in the rear of their present home. On December 8, 1948 she conveyed the property acquired under the will to herself and her husband as joint tenants by a deed which described the premises by metes and bounds.

The will under which complainants' land was acquired and copies of certain deeds in the chain of title going back to 1817 are in evidence. The hedge in question was not referred to as a monument or as a boundary line in the description in any of the instruments. Such descriptions merely provided that the land presently owned by com-

plainants bounded southerly on the land now owned by respondents. A similar provision appears in the 1948 deed whereby Mrs. Essex conveyed the property to herself and her husband as joint tenants. In addition the said deed expressly describes the premises conveyed by actual measurements which neither refer to the hedge nor include the strip of land now in dispute.

The survey made in 1957 for complainants by Clarence F. Lamb, a civil engineer, is also in evidence. Mr. Lamb, who was called as a witness by complainants, testified that the boundary line claimed by respondents is the line shown on the recorded plats; that said line is the same as the division line shown by the survey made in 1947 or 1948; and that the line shown in the 1948 Essex deed is the same as respondents' fence line, the engineering company survey line, and the line on the recorded plat.

We will now discuss respondents' land. This is a portion of a plat of land formerly belonging to Earle H. Williams. He owned this lot and lived in the house now occupied by respondents from 1928 to 1953. In 1929 he had his land surveyed, staked and platted, and recorded said plat plan in the land records of the city of Cranston. A copy of this plan is in evidence. The boundary line claimed by respondents corresponds with the line on said plat.

Mr. Williams conveyed his property to himself and his wife as joint tenants by deed dated October 29, 1935. Thereafter, by deed dated August 21, 1953, they conveyed lots 1 and 2 on the Williams plat to William F. and Frances A. Ciocys. By deed dated September 6, 1955 the Ciocys conveyed the easterly portion of lot 1 to respondents. No reference to a hedge appears in any of the conveyances. The descriptions in the deeds from Mr. Williams to himself and his wife and from the Ciocys to respondents are by metes and bounds which correspond with respondents' claim of where the true boundary is.

The evidence which we have heretofore discussed is not

in dispute. It is also undisputed that for at least fifty years a growth referred to as a hedge has existed in the area to the south of complainants' land and south of the line which respondents claim is the true boundary line. The so-called hedge is described in the evidence as a growth of false spirea, "a native plant which grows very luxuriantly and is apt to take over an area quite quickly unless it is properly controlled." The origin of the hedge is unknown. There is no evidence as to when or by whom it was planted or whether it was a wild growth. The hedge extended from Broad street for about two thirds of the way toward the rear where there was an opening sufficient for a person to walk through. From such opening it continued to the rear and consisted of various shrubs, bushes and wistaria.

The evidence as to the height and width of the hedge is in conflict. Testimony for complainants is that it was approximately 4 to 5½ feet high and 3 feet wide. The respondents' testimony is that the hedge was much wider in spots and that the front was at least 20 feet wide when they first moved in. The complainants' testimony was that the hedge was in a straight line. This was disputed by respondents who presented evidence that the line of the hedge was very irregular and that it did not follow any direct line.

There is no evidence that there was any dispute concerning the boundary line until respondents removed the hedge and erected a fence in May 1957 on the line they claim is the true boundary line. The complainants admitted that to their knowledge there never was any fence or enclosure between the two properties. But they testified that they always considered the center line of the hedge as the division line; that the adjoining owners had always trimmed and taken care of the hedge and land on their respective sides of the hedge; and that no person had ever objected to the location of the hedge or claimed an interest in the area in question.

The bill alleges that the boundary line between the two

properties has been marked by a hedge which has existed continuously for more than fifty years and which has been recognized, agreed upon, acquiesced in and established as the boundary line dividing the lots in question; that prior to the respondents' acquisition of the adjoining lot the alleged hedge had never been questioned as being the true boundary line by any person; and that therefore the center of the hedge is the true boundary line. The respondents' answer in substance and effect denies the truth of such allegations.

We do not deem it necessary to discuss their evidence in detail. They testified that they never recognized or acquiesced in the hedge as the boundary line. Joseph Lukas testified that after he acquired the property he checked the land for stakes; that he found a granite block at the corner of Broad and Lockwood streets and stakes north of the hedge along the southerly line of complainants' land; and that he also had his land surveyed.

Mr. Williams testified that he did not consider the hedge as the boundary line; that in 1929 he had the land surveyed; that at that time stakes were placed on the northerly side of the hedge on the side nearest complainants' land; and that while he lived there no one ever tried to fence off any land belonging to him or to claim it as their own.

It is clear from the record that there is no direct evidence that any of the owners in the chain of title to respondents' land ever expressly recognized or acquiesced in the hedge as the true boundary line for the prescribed time. Although complainants presented testimony to the effect that they and others always considered the hedge to be the boundary line, there is nothing in the evidence indicating that they or their predecessors in title ever stated such belief to respondents or their predecessors in title. The only evidence on this issue presented by complainants is that they and their predecessors always took care of the land and hedge

on their side and that respondents' predecessors in title took care of the other side. But there is no evidence of express mutual recognition or acquiescense.

However, even in the absence of an express agreement it is well settled that under the rule enunciated in *O'Donnell* v. *Penney, supra,* such mutual recognition and acquiescence can also be established by the conduct of the owners of adjoining lands for the prescribed period of time. The question before us then narrows itself further. Was the trial justice in the circumstances required as a matter of law to find that the succeeding owners of the properties in question had by their conduct mutually recognized and acquiesced in the hedge as the true boundary line for the prescribed time or was he clearly wrong in finding that there had not been such recognition and acquiescence?

In our opinion, on the record before him the trial justice was not required to find as a matter of law that such mutual recognition and acquiescence had been established by the conduct of the various owners of the properties in question or that such owners had mutually assumed such acquiescence. There is no evidence of any dispute or uncertainty with respect to the boundary in question until respondents acquired their land in 1955. In finding that there had been no mutual acquiescence the trial justice relied to a great extent on the absence in the 1948 Essex deed of any reference to the hedge in question and also on the fact that the premises were conveyed by measurements which did not include the strip of land in dispute. He inferred therefrom that Mrs. Essex considered the paper line, so called, as the true line between the properties in question. This was clearly a finding of fact. In the circumstances we cannot say that the trial justice was clearly wrong in making such finding and in concluding that the true boundary line was the line claimed by respondents as shown on the surveys, the assessors' plat and the recorded Williams plat.

We have considered complainants' contention that the

failure of respondents' predecessors in title to object to the presence of the hedge constitutes passive acquiescence and is evidence from which it could be inferred that such owners had acquiesced in and assumed that the hedge was the true boundary line. They make reference to a request to charge approved by this court in *Doyle* v. *Ralph*, 49 R. I. 155, to the effect that recognition and acquiescence could be found from evidence of the failure of a party to object to the location of a certain fence. The ruling in that case does not mean that the trier of facts is required to find recognition and acquiescence from such evidence. The holding therein merely means that such evidence was proper for the jury to consider.

In the absence of anything in the record indicating that the trial justice in the case at bar failed to consider such evidence, we must assume that he did consider it and that he did not deem it decisive in arriving at his ultimate finding. In any event, since complainants are not claiming by adverse possession and since there is evidence that the succeeding owners of respondents' land considered the area in dispute as their own, there was no reason for them to protest or object to the existence of the hedge in question.

We agree with complainants' statement that where there is a conflict between the monuments or boundaries and the distances as given in a description of land being conveyed, the monuments must prevail. *Macari* v. *Marandola*, 63 R. I. 369, 382. It is true, as was said in *Di Maio* v. *Ranaldi*, 49 R. I. 204, at page 206, that "A monument governs measurements and the land of an adjoining proprietor is a monument within this rule."

As we have already stated, the express language in the will devising the property to Mrs. Essex and in the 1948 Essex deed described complainants' land as being bounded southerly by respondents' land. There was no reference to the hedge in either instrument. The northerly line of the respondents' land or the southerly line of the complainants'

land, not the hedge, constituted the monument in such will and in the 1948 Essex deed. The complainants are begging the question in trying to apply such rule to the case at bar. It has no application to the facts here.

After carefully examining the record we are satisfied that the trial justice did not misconceive the evidence relative to the extent of the hedge or misconstrue the nature of a hedge as a boundary. In our opinion he did not overlook or misconceive any material evidence nor did he fail to apply the correct law.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Swan, Keeney & Jenckes, Harold W. Thatcher, John B. Dillon,* for complainants.

*Edward L. Gnys, Jr.,* for respondents.