DECISION
In this civil action, the plaintiffs assert claims of adverse possession and boundary line acquiescence to a rectangular parcel of land adjoining their lot to the defendants' lot. The matter has been heard before this Court in a nonjury trial, after which each party submitted post-trial memoranda. The Court had reserved judgment on the defendants' Motion to Dismiss pursuant to Super. Ct. R. Civ. P. Rule 12(b) until after trial. Decision is herein rendered in accordance with Super. Ct. R. Civ. P. Rule 52.
 FACTS AND TRAVEL
After review of all the evidence and consideration of the arguments presented in post-trial memoranda, this Court makes the following factual findings. The plaintiffs, George H. Gifford III and Joyce R. Gifford (Giffords), are the owners of real property situated in the Town of Cumberland, County of Providence, State of Rhode Island, and designated as lot numbers seventy-six and seventy-seven on the Home-Crest Plat, Cumberland Hill, Rhode Island, July 1919 (the Giffords' lot). The Giffords purchased these lots from Nicholas E. Cambio (Cambio) on June 9, 1989. The defendants, Raymond F. Racine and Lorraine J. Racine (Racines), are the owners of real property situated in the Town of Cumberland, County of Providence, State of Rhode Island, and designated as lot number seven-A on the Gadoury Highland Annex Plat, Cumberland, Rhode Island, December 1955 (the Racines' lot or lot seven-A). The Racines purchased this lot from Gerard Belisle and Rachel Belisle on July 2, 1956.[1] The disputed parcel of real estate lies between the Giffords' lot and the Racines' lot fronting Alton Avenue, and has a northern boundary along Alton Avenue measuring approximately twelve feet delineated by an iron pin marking the northwest corner and a granite bound and fence post five feet in height marking the northeast corner, both approximately three feet south of Alton Avenue, then traveling south along this fence approximately one-hundred and two feet over a concrete bound with a circular marking to the southern boundary of lot seven-A, thus marking the eastern boundary and southeast corner, and then traveling west approximately seventeen feet from the southeast corner to a granite bound marking the southwest corner.
In 1955, Leo A. Demers (Demers), a Registered Land Surveyor in the State of Rhode Island, conducted a survey of land east of the Home-Crest Plat and recorded the Gadoury Highland Annex Plat Map (Gadoury Plat or Gadoury Map). Based upon this survey Demers marked the western boundary of lot seven-A with granite boundary markers: one placed on the northwest corner approximately three feet south of Alton Avenue and one placed on the southwest corner where lot seven-A meets the northern boundary of the house lot.
The record contains no credible evidence that the Racines claimed to own land west of the fence prior to September 1995, when Demers conducted a field survey and informed the Racines for a second time that the western boundary of lot seven-A as represented by the fence and granite bounds was an error. In fact, the Racines' conduct and silence professed the opposite.
In 1968, the Racines did extensive landscaping to lot seven-A. They cleared and leveled the lot and installed an in-ground swimming pool. To enclose this swimming pool, the Racines placed a chain-link fence (the fence) five feet in height around the lot, one side of which traveled north to south along the western boundary line of lot seven-A as established by the granite boundary markers.
In July 1974, Demers conducted for the Racines a survey of the open lot which he did not record in the Town Hall of Cumberland. Demers marked the northern boundary of the open lot and the southern boundary of the Giffords' lot by placing granite boundary markers. Demers placed one granite marker in the northwest corner of the open lot, and reset one granite marker underneath the fence marking the southeast corner of the now disputed parcel and the southwest corner of lot seven-A. Furthermore, Demers informed the Racines that there was a potential error in the prior calculation of the western boundary of lot seven-A as established by the Gadoury Map and as delineated by the granite boundary markers and the fence. Demers told the Racines that he would have to perform a complete field survey to determine the boundary line error and to mark the correct western boundary of lot seven-A. However, the Racines neither instructed Demers to conduct a field survey nor did they reset the granite boundary markers correctly to represent the western boundary of lot seven-A.
In the fall and winter of 1988, Cambio began construction of the house that the Giffords' purchased in June 1989. Except for a few trees, Cambio cleared and filled the Giffords' lot, and placed loam and planted grass seed up to the north-south line established by the granite boundary markers and the fence. Moreover, Cambio planted trees in the disputed parcel west of the fence. Because the western boundary line of lot seven-A was visually evidenced by the granite bounds and fence, the Giffords and Cambio did not discuss the eastern boundary line of the Giffords' lot.
In June 1989, after the Giffords purchased the lot, Mr. Racine and Mr. Gifford had a conversation during which Mr. Racine pointed out that the granite boundary markers and the fence represent the western boundary of lot seven-A and the eastern boundary of the Giffords' lot. During this conversation Mr. Racine also told Mr. Gifford that the granite boundary markers at the northwest and northeast corners of the open lot represent the boundary line between the open lot and the Giffords' lot. The Giffords used the land west of the fence by mowing the lawn, by building, maintaining, and expanding a vegetable garden along the fence beginning in the summer of 1990, and by planting a strawberry bed in 1993, a poplar tree in 1994, and an evergreen hedge along the fence in 1995.
Moreover, the Racines' continued to acknowledge the fence and granite bounds as boundary markers and the Giffords' ownership of the land west of the fence. In 1992, Mr. Racine asked Mr. Gifford, and was granted permission, to enter the disputed parcel to replace the fence and to place a concrete edge beneath the fence along the property line as established by the old fence and the granite boundary markers. During the removal of the old fence and grading to install the concrete edge, the southern granite bound was buried, and Mr. Racine replaced this boundary line marker with a concrete bound containing a circular cutout. Mr. Racine reestablished the western boundary line of lot seven-A in the same location as established by the granite boundary markers since 1955 and the fence since 1968. Therefore, from the above facts, this Court finds that the Racines and Giffords, and their predecessors in title, acquiesced in the western boundary line of lot seven-A and the eastern boundary of the Giffords' lot as established by the granite bounds and the fence and that this boundary has been established since Demers marked the line with granite bounds in 1955.
In September 1995, Demers conducted and recorded a field survey based on the Home-Crest Plat of the lots discussed above and determined that the correct western boundary line of lot seven-A as intended by the Gadoury Plat is west of the fence and granite boundary markers. Demers placed an iron pin, approximately three feet south of Alton Avenue and twelve feet west of the aforementioned granite bound and fence post located in the northwest corner of lot seven A, to mark the northwest corner of the disputed parcel. Additionally, Demers set a granite bound along the northern boundary of the open lot, approximately seventeen feet west of the aforementioned concrete bound marking the southwest corner of lot seven-A, to mark the southwest corner of the disputed parcel. On October 17, 1995, after claiming ownership of the disputed parcel, the Racines served the Giffords, and on October 23, 1995 filed with the Town of Cumberland, a Notice of Intent to Dispute Adverse Possession under R.I.G.L. 1956 § 34-7-6.
 RACINES ACQUIESCED IN THE WESTERN BOUNDARY LINE OF LOT SEVEN-A AS ESTABLISHED BY THE FENCE AND GRANITE BOUNDARY MARKERS
"Establishing title to real property by way of adverse possession is a statutorily created right in Rhode Island." Walshv. Cappuccio, 602 A.2d 927, 930 (R.I. 1992). Rhode Island General Law § 34-7-1 prescribes what set of circumstances must occur before an owner of real property is divested of legal title thereto as a consequence of that property being adversely claimed and possessed by another. Anthony v. Searle, 681 A.2d 892, 897 (R.I. 1996). The adverse possession statute provides as follows:
 [w]here any . . . persons, or others from whom he, she, or they derive their title, . . ., shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, . . . for, and during that time, claiming the same as . . . their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the . . . persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, . . . and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for baring the action.
R.I.G.L. 1956 § 34-7-1. Under Rhode Island case law, in order to establish adverse possession a claimant's possession must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive. Locke v. O'Brien, 610 A.2d 552, 555 (R.I. 1992) (citing Sherman v. Goloskie, 95 R.I. 457, 465, 188, A.2d 79, 83 (1963)). A claimant must establish the "indicia of adverse possession for a period of ten years . . . ." and must proffer strict proof, that is, proof by "clear and convincing evidence" establishing each of the above elements, to succeed with the adverse possession claim. Id. A claimant may also tack on the period of possession of their predecessor in interest from whom he or she derives title. Taffinder v. Thomas, 119 R.I. 545, 549, 381 A.2d 519, 523 (1977).
Furthermore, our law recognizes that "a boundary line may become established by a landowner's acquiescence in its location." Peloquin v. Ciaccia, 413 A.2d 799, 800 (R.I. 1980) (citing Paquin v. Guiorguiev, 117 R.I. 239, 242, 366 A.2d 169, 171 (1976)). This doctrine of acquiescence holds that the real property owners of adjoining estates are precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring the right of reentry, or ten years. Locke v. O'Brien, 610 A.2d at 556 (citing O'Donnell v. Penney, 17 R.I. 164, 20 A. 305 (1890)). "The acquiescence is also an issue of fact depending upon the evidence in each case." Essex v. Lukas, 90 R.I. 457, 459-460,159 A.2d 612, 613 (1960) (citing DiMaio v. Ranaldi, 49 R.I. 204, 206,142 A. 145, ___, (1928); Ungaro v. Mete, 68 R.I. 419, 426,27 A.2d 826, 829, (1942)). This doctrine is usually invoked when determining whether boundaries marked by physical objects, such as by a fence or stone monument, will be given preference over boundary lines described in recorded title. Id. "Upon the finding by a trial justice that a fence or other divider existed for the requisite period of time . . . and was acquiesced in by both parties, and their predecessors in title if necessary, the fence or other divider becomes the new boundary line between the two properties." Peloquin v. Ciaccia, supra. Moreover, even absent evidence of an express agreement between the parties, a claimant alleging acquiescence to establish adverse possession must show that a boundary marker existed and that the claimant and true owner recognized that boundary for a period equal to ten years. The Court may infer the element of recognition from the silence of one party or their predecessors in title who are aware of the boundary. Locke v. O'Brien, 610 A.2d at 556. It is a well settled rule that "when a boundary line has been maintained for the statutory period of ten years, such fact is `conclusive evidence' of an agreement that it is the true boundary. . . .," Malone v.O'Connell, 86 R.I. 167, 171, 133 A.2d 756, 759 (1957), and the "parties will be precluded from claiming that the line so acquiesced in is not the true boundary." Paquin v. Guiorguiev, 117 R.I. at 242, 366 A.2d at 171 (citing Rosa v. Oliveiro,115 R.I. 227, 342 A.2d 601 (1975); Essex v. Lukas, supra; Malone v.O'Connell, supra; Ungaro v. Mete, supra; O'Donnell v. Penney,supra.).
From the above facts, this Court concludes that the granite boundary markers and fence have established the western boundary line of lot seven-A since 1955. The Racines' argument that the correct western boundary of the Gadoury Plat is the eastern boundary of the Home-Crest Plat is misplaced because "where there is a conflict between the monuments or boundaries and the distances given in a description of land being conveyed, the monuments must prevail." Essex v. Lukas, 90 R.I. at 465, 159 A.2d at 616 (citing Macari v. Marandola, 63 R.I. 369, 382, 9 A.2d 21, 27 (1939)). The intent of the Gadoury Plat designers is irrelevant to a determination by this Court of whether the Racines acquiesced in the established boundary line. Taffinder v.Thomas, 119 R.I. at 553, 381 A.2d at 523 (The defendant cannot "claim title based on speculation as to the intent of a grantor in their chain of title."). Therefore, this Court concludes that since 1955 the Racines and Giffords, and their predecessors in title, have acquiesced by their aforementioned conduct and silence — the placement and acknowledgment of the permanent granite boundary markers, the installation of the fence, the placement of loam and planting of grass seed and trees along the fence, statements as to the boundary line location, and use of the disputed parcel — to the western boundary line of lot seven-A and eastern boundary line of the Giffords' lot as established by the granite bounds and fence. This Court further concludes that this boundary line has been established since Demers marked the line with the granite boundary markers in 1955 and is now the boundary line between the Racines' lot and the Giffords' lot.
 THE RACINES MOTION TO DISMISS IS DENIED
On November 22, 1995 the Racines filed a Motion to Dismiss pursuant to Super. Ct. R. Civ. P. Rule 12(b). Said matter was heard on November 28, 1995 wherein inter alia this Court entered an Order to continue this matter until resolved on the merits. In accordance with the factual findings and conclusions of law contained herein, the Court denies this Motion. Counsel shall prepare and submit and appropriate Order for entry in accordance herewith within ten days.
[1] The Racines also own two lots fronting America Street, formerly known as Abbott Street, that are delineated on Assessor's Plat number fifty-two as lot numbers eighty-two and eighty-three (the open lot), a combined lot that is positioned south of the Giffords' lot, and lot number two-hundred sixty-five (the house lot), a single lot that is positioned south of the Racines' lot.