Claire M. NORTON et al.

v.

George A. COURTEMANCHE et al.

v.

SAI Surveying Company et al.

No. 2001–63–APPEAL.

Supreme Court of Rhode Island.

June 7, 2002.

---

Archibald B. Kenyon, Jr., Mary McLeod, Wakefield, for Plaintiff.

Gardner H. Palmer, Jr., James S. D'Ambra, Joseph H. Olaynack, III, Mark P. Dolan, Providence, William W. Corcoran, Newport, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This is a boundary dispute over certain abutting parcels of real estate located in the Town of Jamestown (town) on the island of Conanicut. The plaintiffs, Claire M. and Catherine Norton, appeal from a Superior Court judgment entered in favor of the defendants, George and Jeannine Courtemanche. William P. Norton (decedent) originally filed this action, but he died during its pendency. The Superior Court substituted Claire M. and Catherine Norton, co-administrators of his estate, as party plaintiffs. The complaint sought declaratory and injunctive relief, as well as damages, over a boundary dispute with the defendants. The defendants also appeal from the Superior Court's judgment in favor of the third-party defendants, SAI Surveying Company (SAI) and Bank of Newport (Bank), on the defendants' third-party complaint against them for negligence and breach of contract, respectively.

The plaintiffs argue on appeal that the trial justice erred in excluding certain statements of decedent from evidence. They also suggest that she erred in finding that a cut-grass line was an insufficiently permanent boundary to support plaintiffs' claim of adverse possession. Finally, they posit error in her finding that the plus-or-minus notations on the plat map in question should be integrated with the adjoining properties in such a way as to provide plaintiffs' lot with merely a remainder of the property left to it after first accounting for the fixed boundaries of the adjoining properties. On their appeal, defendants

argue that the trial justice erred in granting third-party defendants' motion for a judgment as a matter of law on defendants' third-party claims. Because of our resolution of plaintiffs' appellate arguments and because defendants failed to object at trial to the granting of the dismissal motions in question, we need not address the merits of defendants' contentions on their appeal from the judgment dismissing their third-party claims. A single justice of this Court ordered the parties to show cause why the issues presented in their respective appeals should not be summarily decided. Because they have not done so, we proceed to decide the appeals at this time.

### Facts and Travel

At issue in this case is the property boundary between plaintiffs' and defendants' abutting Jamestown properties. The Boy Scouts of America originally owned all the property in question. In October 1941, a registered engineer subdivided the property and memorialized this division in a "plat map" recorded in the town's land-evidence records. The subdivision was bounded on the west by Beavertail Road and on the east by a body of water known as Hull Cove. In 1981, decedent purchased his land—lot No. 22 on the plat map—while defendants purchased their land—lot No. 20 on the plat map, abutting decedent's lot—in 1992. The plat map described lot No. 22 as measuring 100 feet plus (100' +) on the western edge, 100 feet on the eastern boundary, 136 feet plus or minus (136' ±) on the northern edge, and 140 feet plus or minus (140' ±) on the southern edge. The defendants' property is shown as measuring 100 feet square. After they purchased lot No. 20, defendants began to build a house on the lot. To accomplish this task, they hired SAI to perform a survey of the land and to stake out their property's boundaries. Al-

though decedent almost immediately objected to SAI's location of the boundary line, he took no legal action until filing this suit in 1993, after defendants had finished building their home. The decedent alleged in his complaint that defendants' house encroached on his property, as established by the plat map, and that even if the SAI survey line represented the original property line, the doctrine of adverse possession—via decedent's "mowed occupation line"—entitled him to the disputed strip of land.

The trial justice, after receiving evidence at the trial, issued a written decision in which she found that the SAI property line reflected the actual boundary between lots No. 22 and No. 20. She decided that the plat map's use of the "plus-or-minus" designation for decedent's northern and southern boundaries "suggests that there could be a variance from those dimensions [136' ±, and 140' ± respectively]." The plaintiffs presented no evidence that the engineer who prepared the plat used the plus-or-minus designation to indicate a negligible deviation. Therefore, the trial justice determined that the drafter of the original plat map intended to estimate the size of decedent's land through the use of the plus-or-minus designations, and thus that map defined the size of his property as a remainder of the other defined properties that abutted his lot, none of which was described with the disputed plus-or-minus designations.

Having determined that the SAI survey line represented the actual boundary between lots No. 22 and No. 20, the trial justice turned her attention to decedent's claim of adverse possession. The plaintiffs attempted to establish through various witnesses that, whatever the boundary line may have been (as reflected on the plat map or the SAI survey), decedent had adversely possessed a certain disputed

ten-foot swath of land by virtue of having regularly mowed the grass in that area of the property to a particular point (the mowed-grass line). During the testimony of Charles Cooper (Cooper), a friend of decedent's since the 1940's, plaintiffs attempted to introduce certain statements that decedent allegedly communicated to Cooper about the boundary line. Cooper testified that he visited decedent in December 1992, and that, during this visit, decedent made some statements to Cooper about SAI's staking of the property line.[1] The plaintiffs' counsel argued that decedent's statements qualified as exceptions to the hearsay rule under Rule 804(c) of the Rhode Island Rules of Evidence. Because decedent had notified defendants of his objection to the staking of the property line before his alleged statements to Cooper, the trial justice found that there was "insufficient evidence of good faith" to allow the admission of the statements. As a result, plaintiffs never introduced the contested statements into evidence.

In addition, the trial justice found that decedent's adverse-possession claim lacked sufficient evidentiary support. The trial justice concluded that there was no doubt that the decedent and his predecessors in interest regularly mowed the lawn on the eastern side of the property—abutting lot No. 20—using a telephone pole as a guide. The trial justice found, however, that plaintiffs' witnesses were unclear about where the cut-grass line lay, and that, notwithstanding the telephone pole, the line apparently had shifted over the years from east to west. Moreover, according to the trial justice, plaintiffs' witnesses never would have been able to identify the cut-grass line's location without plaintiffs' counsel's leading questions.

Given the tenor of this inconclusive testimony, the trial justice ruled that "plaintiffs have failed to satisfy this Court, under the rigorous clear and convincing evidence standard, that the boundary line between their property and that of defendant has been established by the doctrine of adverse possession * * *."

▮ On appeal, plaintiffs allege that the trial justice committed three errors.[2] First, plaintiffs contend that the trial justice committed reversible error by excluding decedent's alleged statements to Cooper. Asserting that Rule 804(c) should be liberally applied and that the trial justice's application of this rule was "far from liberal," they suggest that the trial justice therefore committed reversible error when she excluded decedent's statements. Second, plaintiffs allege that the trial justice erred by failing to recognize as a matter of law that a cut-grass line can prove sufficient to constitute a property boundary for the purpose of establishing adverse possession. Furthermore, plaintiffs argue, because the evidence pertaining to the cut-grass line was uncontradicted, the trial justice incorrectly rejected the testimony of plaintiffs' witnesses concerning the location of the grass boundary. Third, and finally, plaintiffs posit that the plus-or-minus designations on the plat-map measure-

---

1. Although opposing counsel objected before Cooper testified about the substance of these statements, plaintiffs made no offer of proof about what Cooper would have said if the court had allowed him to testify. The statements apparently related to decedent's belief that SAI had staked out the property line at an incorrect location.

2. The defendants also allege errors by the trial justice in relation to their third-party claims. Because defendants failed to object to the dismissal of their third-party claims at the trial, they have waived any assignment of error on appeal with respect to the dismissal of such claims. In any event, because of our resolution of plaintiffs' assignments of error on appeal, these allegations of error are moot.

ments for lot No. 22's northern and southern boundaries were intended to represent merely "slight or unimportant inaccuracies," but not a significant loss of a ten foot swath of land to plaintiffs' property.

The defendants respond that the trial justice committed no reversible errors. Specifically, they argue that the trial justice properly exercised sound discretion in excluding Cooper's testimony about the decedent's alleged statements, and that her decision to do so did not rise to the level of an abuse of discretion. Next, they respond that the trial justice appropriately made findings of fact about plaintiff's adverse possession claim, and that her findings of fact about the credibility of plaintiffs' witnesses are entitled to great deference by this Court. Furthermore, they contend, the trial justice did not overlook or misconceive material evidence, nor was she clearly wrong in her factual determinations. The defendants also argue that the trial justice never found, as a matter of law, that a cut-grass line could not support a claim for adverse possession, but that, taken in its proper context, she ruled that the cut-grass line in this case lacked sufficient permanency and specificity to support such a claim. Finally, defendants insist that the trial justice correctly interpreted the plus-or-minus designations on the plat map, resulting in interior lots on the plat with precise boundary measurements, and corner lots (such as decedent's) with the remainder, as connoted by the plus-or-minus designations.

## Analysis

### I

### Hearsay

The plaintiffs initially challenge the trial justice's exclusion of alleged statements uttered by decedent to his friend, Cooper. The hearsay doctrine, as codified in the Rhode Island Rules of Evidence, prohibits the introduction of "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." R.I. R. Evid. 801(c). This rule, however, admits of several exceptions, and they also are codified in the applicable rules of evidence. At issue in this case is the trial justice's application of section (c) of Rule 804, entitled "Hearsay exceptions; declarant unavailable." This rule allows the introduction of hearsay statements in situations in which the declarant is unavailable. Rule 804(c) provides, in relevant part, that "[a] declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." The plaintiffs are correct that, in interpreting a precursor to Rule 804(c), this Court held that statements of a decedent are admissible as an exception to the hearsay rule "when the court finds that it [the statement] was made *in good faith* before the commencement of the action and upon the personal knowledge of the declarant." *Waldman v. Shipyard Marina, Inc.*, 102 R.I. 366, 368, 230 A.2d 841, 843 (1967). (Emphasis added.) In that case, the Court also stated that this exception to the hearsay rule "should be liberally applied." *Id.* at 369, 230 A.2d at 843.

 In commenting on the current rule, however, we have stated that "the admission of evidence rests within the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." *Tinney v. Tinney*, 770 A.2d 420, 434 (R.I.2001) (quoting *Graff v. Motta*, 748 A.2d 249, 252 (R.I. 2000)). Furthermore, "[a]n aggrieved party challenging the ruling of the trial justice additionally bears the supplemental bur-

den of establishing that the questioned evidence was material * * *." *Id.* (citing *Graff,* 748 A.2d at 252). When plaintiffs' counsel questioned Cooper about decedent's alleged statements, opposing counsel immediately objected on hearsay grounds. The trial justice concluded that because decedent previously had indicated his disagreement with the positioning of the SAI stakes, insufficient evidence existed of decedent's good faith to allow the statements into evidence. Even in the *Waldman* case, which indicated that the exception for a decedent's statement should be applied liberally, the Court required a finding of good faith as a prerequisite to admission of such statements. *Waldman,* 102 R.I. at 368, 230 A.2d at 843. Here, the trial justice found that decedent's previous objections to the boundary line raised a question about his good faith in making statements about that property boundary. From a review of the record, which does not include a proffer about what Cooper would have testified to concerning decedent's statements if the court had allowed him to do so, we cannot say that the trial justice's exclusion of this evidence amounted to an abuse of discretion. Therefore, we decline to reverse the trial justice's ruling.

■ Furthermore, by failing to make an offer of proof at the trial indicating what Cooper would have testified to concerning the decedent's alleged statements, plaintiffs have failed to demonstrate the materiality of these alleged statements to the outcome of plaintiffs' case. This Court can only assume that, whatever statements decedent may have made upon discovering the location of SAI's stakes in the ground, they would have demonstrated his disagreement with whatever boundary those stakes purportedly represented. But such a conclusion is clearly memorialized in the record without this evidence, and it is cer-

tainly reflected in the fact that decedent exercised his right to contest the boundary by filing the Superior Court action. We can discern no other purpose for introducing these statements from the scant record before us. Thus, we cannot conclude that the statements were material to an issue before the trial justice, or that their exclusion prejudiced plaintiffs' case. Therefore, even if the trial justice had erred in excluding the statements—and we do not believe that she did—such error would have been harmless to plaintiffs' claims.

## II

### Adverse Possession

■ We have held that, to prevail on a claim of adverse possession, a claimant must establish by clear and convincing evidence that his or her possession of the property in question has been "actual, open, notorious, hostile, under claim of right, continuous, and exclusive." *Cumberland Farms, Inc. v. Mayo Corp.,* 694 A.2d 752, 753 (R.I.1997) (mem.) (citing *Locke v. O'Brien,* 610 A.2d 552, 555 (R.I. 1992) and *Walsh v. Cappuccio,* 602 A.2d 927, 930 (R.I.1992)). Furthermore, "[t]he findings of adverse possession by a trial court sitting without a jury are entitled to great weight and will not be overturned unless the factual finding is clearly wrong or unless the trial court overlooked or misconceived material evidence." *Walsh,* 602 A.2d at 930 (citing *Hilley v. Simmler,* 463 A.2d 1302, 1304 (R.I.1983)).

■ The plaintiffs marshal two challenges to the trial justice's determination that the mowed-grass line did not enlarge the dimensions of lot No. 22 by adverse possession. First, plaintiffs contend that the trial justice erred in discounting the testimony from plaintiffs' witnesses about the location of the mowed-grass line. In support of this argument, plaintiffs sug-

gest that this Court's decision in *Gorman v. Hand Brewing Co.*, 28 R.I. 180, 66 A. 209 (1907) bound the trial justice to accept uncontradicted and unimpeached evidence as conclusive. The plaintiffs themselves recognize, however, that this rule is not as all-encompassing as they suggest. Indeed, this Court has stated that, even though a fact-finder may not arbitrarily disregard uncontradicted testimony, "such testimony 'may be rejected if it contains inherent improbabilities or contradictions that alone or in connection with other circumstances tend to contradict it. Such testimony may also be disregarded on credibility grounds as long as the factfinder clearly but briefly states the reasons for rejecting the witness' testimony.'" *Lombardo v. Atkinson–Kiewit*, 746 A.2d 679, 688 (R.I.2000) (quoting *Hughes v. Saco Casting Co.*, 443 A.2d 1264, 1266 (R.I.1982)).

The trial justice commented on her reasons for discounting the testimony of plaintiffs' witnesses about the mowed-grass line. She said in her decision that there was "no question that plaintiffs and their predecessors in title mowed their property * * *." She found, however, that

> "this [c]ourt is not convinced that either of these two witnesses could have identified the location of the cut grass line without the leading questions of plaintiffs' counsel [and that][i]t is unclear to the [c]ourt from the testimony of Joseph Marrinan where the cut grass line started and where it ended. * * * In addition, Peter Cooper acknowledged that the cut grass line may have shifted

somewhat * * * [and that] the photographs in evidence cannot settle this controversy."

Given these remarks and observations by the trial justice, we cannot say that the witnesses' testimony was uncontradicted and unimpeached. Therefore, we will not disturb the trial justice's findings of fact with regard to the mowed-grass line.

■ The plaintiffs next allege that the trial justice misapplied the law governing what constitutes a boundary for purposes of adverse possession. Although "the issue of what constitute[s] the boundaries of a parcel of land is a question of law, the determination of where such boundaries are is a question of fact." *Rosa v. Oliveira*, 115 R.I. 277, 279, 342 A.2d 601, 602 (1975) (citing *Waldman v. Town of Barrington*, 102 R.I. 14, 227 A.2d 592 (1967)). *See also Essex v. Lukas*, 90 R.I. 457, 459, 159 A.2d 612, 613 (1960). We therefore review plaintiffs' claim of error *de novo*. The plaintiffs' suggestion of error stems from the trial justice's written decision, in which she found that "[a] cut grass line, however, lacks the definition and permanence of a fence or row of hedges." They cite this statement as evidence that the trial justice misapplied the law concerning the establishment of property boundaries,[3] but in doing so they take the statement out of context. It is clear from her decision that the trial justice was not announcing a rule of law, but merely observing that, *in this case*, evidence of the definite location of the grass-cut line was insufficient to support a finding of adverse possession.[4]

3. The plaintiffs also have called to our attention the *Walsh* case, which they suggest stands for the proposition that a mowed-grass line can determine a boundary for purposes of adverse possession. *Walsh v. Cappuccio*, 602 A.2d 927, 930 (R.I.1992). The plaintiffs, however, oversimplify the *Walsh* holding. That case involved a plaintiff's predecessor in title who cleared a lot, built a house, installed

a septic system, planted a lawn, and constructed a driveway partially on an abutting property. *Id.* Because of our resolution of plaintiffs' claim above, we have no need to decide whether a cut-grass line, without more, can be enough to establish a boundary for purposes of adverse possession.

4. The trial justice's comment, in context, is as follows:

Discerning no error of law on the part of the trial justice and according great deference to her factual findings on this issue, we decline to reverse her finding that the grass line in this case was insufficiently definite in location and in the period of its existence to support plaintiffs' claim of adverse possession.

## III

### Plat Map Boundaries

 The plaintiffs' final contention on appeal is that the trial justice erred in how she interpreted the plus-or-minus boundary designations used in the plat map as granting to plaintiffs a variable northern and southern property boundary. The plaintiffs argue that the plus-or-minus designation was merely a tool used on plat maps to address "slight or unimportant inaccurac[ies]." Furthermore, they suggest that a plus-or-minus designation refers to a variation of not more than one unit of the last significant digit. The trial justice, on the other hand, found as a matter of fact that these plus-or-minus designations should be "interpreted as giving to plaintiffs that amount of land left over * * *[,]" and that the plat map "intended that the plaintiffs take that land left over after the other lots in the plat were laid out." This interpretation of the plus-or-minus designations, so the trial justice found, reconciled the SAI survey to the plat map, whereas plaintiffs' interpretation of the plus-or-minus designations "arguably would extend this dispute to some, if not all, of the other landowners in the platted subdivision. This [c]ourt, in essence, would be holding that all of the

property lines of those persons owning land to the east of plaintiffs were originally platted as being ten feet farther east."

 Once again, we note that "our standard of review of the findings of fact by a trial justice in a non-jury case is deferential. We shall not disturb such findings unless they are clearly wrong or unless the trial justice has overlooked or misconceived relevant and material evidence." *Barone v. Cotroneo*, 711 A.2d 648, 649 (R.I.1998) (mem). And we reiterate that the determination of where the boundaries lie for a particular parcel of real estate is a question of fact, to be determined by the fact-finder. *See Essex*, 90 R.I. at 459, 159 A.2d at 613. We agree with plaintiffs that a *possible* interpretation of the plus-or-minus designations was to cover slight or inconsequential errors in the plat drafting. The trial justice, however, found as a factual matter that the use of the plus-or-minus designations by the plat-map drafter in this case represented a greater possible deviation. She believed that the plus-or-minus designations connoted a remainder approach to the sizing of the end lots on the plat map and that, given the fixed boundaries of the interior lots, this interpretation comported more fully with the plat-map drafter's intent. We have no basis to conclude that the trial justice clearly erred in this broader but reasonable interpretation of the plus-or-minus designations. Because we show great deference to the trial justice's findings of fact, we decline to reverse her on this score.

Moreover, we conclude that the trial justice's decision comports with this Court's

"[t]his [c]ourt finds it plausible that a cut grass line existed, that it may well have run somewhere to the east of the S.A.I. Survey line, and that it may have shifted over time. A cut grass line, however, lacks the definition and permanence of a fence or row of hedges.

There is simply insufficient evidence from which this [c]ourt can determine that a defined cut grass line existed in a particularized location and that it existed for the requisite period of time."

holding in *Co–Operative Building Bank v. Hawkins*, 30 R.I. 171, 73 A. 617 (1909) (collecting cases). In *Hawkins*, this Court interpreted a deed that used the word "about" in relation to the length of a boundary line. We are of the opinion that the use of the word "about" in *Hawkins* is analogous to the plus-or-minus designations in the plat map at issue before us. Therefore, we look to the *Hawkins* interpretation of "about" to inform our review of the trial justice's interpretation of the plus-or-minus designations. According to the *Hawkins* Court, "such effect should be given to that word [about] as will carry out the intention of the parties." *Id.* at 184, 73 A. at 622. Moreover, the Court held that "[t]he use of this word [or the plus-or-minus designation] in descriptions, as in its ordinary use, indicates that exactness is not attempted, and that an estimate is intended to be given * * *. [I]t is notice to all that, to carry out the intention of the parties, an *elasticity* may be given to the call in regard to which the parties have not considered it advisable to be exact." *Id.* at 186, 73 A. at 623. (Emphasis added.) It is our opinion that the trial justice's factual finding that the plus-or-minus designations resulted in plaintiffs' possessing a remainder lot size, after fixing the other lots' measurements, comports with the *Hawkins* Court's explanation of the parties' use of intentional imprecision in the drafting of land documents. Therefore, we reject the plaintiffs' allegations of error as unpersuasive, and refuse to reverse the trial justice's findings.

## Conclusion

The trial justice did not err. She exercised permissible discretion in refusing to admit unreliable hearsay testimony. Moreover, we cannot say that the trial justice overlooked or misconceived evidence, was otherwise clearly wrong, or misapplied the law in her ruling on the plaintiffs' claim of adverse possession. Finally, we can discern no error in the trial justice's interpretation of the plus-or-minus designations in the plat map. For the foregoing reasons, we deny and dismiss the plaintiffs' appeal and affirm the Superior Court's judgment. Because we deny the plaintiffs' appeal, we do not reach the merits of the defendants' appeals with regard to that portion of the judgment dismissing the defendants' third-party claims against the third-party defendants because they are now moot and because the defendants waived them when they failed to object to same at the trial.