DECISION
A bench trial was held in this matter on April 22, 2002.
Thereafter, the parties submitted memoranda of law. The principal issue presented for resolution is the establishment of a boundary between plaintiff's and defendant's adjoining property. Although each party pled adverse possession and/or acquiescence claims with respect to the contested property, neither party has offered proof relating to the requisite elements of such claims. Instead, each party asserts ownership by deed. In that regard, the case presents conflicting opinions of land surveying experts to be resolved by the Court. The dispute centers around certain property depicted on Tiverton Tax Records, Map 4-7 (Exhibit 1). Adelaid Paul ("Paul"), once owned in common Lots 1, 2, 61, 61C, 61B, 61A and 62 which are depicted on the map. Paul conveyed those lots in a succession of deeds. In 1946, he conveyed Lot 62 (Exhibit 2). In 1946, Paul next conveyed Lot 1 (Exhibit 3). In 1952, Paul conveyed Lot 61A (Exhibit 4). In 1963 Paul conveyed Lot 61B (Exhibit 5). Lot 61B is the plaintiff's land. In 1964 Paul conveyed Lots 61 and 61C in a single deed (Exhibit 7). Lot 61C is the defendant's land. Therefore, it is uncontroverted that at the time Paul deeded plaintiff's land, Paul still owned defendant's land.
A survey done in 1996 by Narragansett Engineering of defendant's land ("Narragansett Plan", Exhibit 7) is at the heart of this dispute. The Narragansett Plan was prepared by Kamal Hingorany ("Hingorany") who testified at the trial regarding the manner in which he established the boundaries between plaintiff's land and defendant's land. Realizing that all of the deeds from Paul to the various lots preceded Paul's conveyance of defendant's land, Hingorany took as the starting point of his survey the point where the northerly line of King Road intersects Crandall Road. He then applied the measurements from the deeds from Paul conveying lots 1, 62, 61A and 61B. In using this method, a problem arose in that the deed descriptions described the lots as rectangles, whereas the starting point on Crandall Road (the east side of Lot 1) was an angled line. The result was that a gap occurred in the descriptions, which gap would be to the west of lot 61B. Hingorany assigns that gap to plaintiff's land, Lot 61A.
Plaintiff offered an opinion contrary to that of Hingorany at trial through Donald J. Medeiros, a registered land surveyor and professional engineer ("Medeiros"). He performed a boundary survey of plaintiff's land. Since the Narragansett Plan had been recorded in the Tiverton Land Evidence Records, Medeiros discovered it while doing his title research. Upon inquiring of the various owners in the area as to whether they had any other previous surveys of their respective properties, Medeiros learned that a survey had been prepared by Malcolm E. Berrett, P.E. in 1974 ("Berrett Plan" Exhibit 13). The Berrett plan depicted Lot 61A and Lot 61B. The Berrett Plan furnished a factual evidence of the existence of the stone wall forming the boundary between Lot 61A and Lot 61B. That fact in conjunction with the deed of Lot 61A by Paul provides persuasive evidence in locating the boundary line between said properties. Lot 61A is immediately to the east of plaintiff's land. This deed describes the westerly boundary of Lot 61A, which is the easterly boundary of Lot 61B, as "running southerly by other land of the grantor and partly in line of a stone wall, two hundred (200) feet to King Road; . . . "On the Berrett Plan, Berrett showed that stone wall, which existed at the time Berrett made his survey, and it was shown it as the boundary between Lot 61A and Lot61B. Hingorany, on the other hand, did not find the stone wall since it no longer existed and he was not aware of the Berrett Plan.
The deed of Lot 61A from Paul is dated April 3, 1952. On January 11, 1963, Paul executed the deed to plaintiff's predecessor in title. In that deed, Paul described plaintiff's land as follows:
 "BEGINNING at a point in said northerly line of King Road, said point being the southeasterly corner of the tract to be described and the southwesterly corner of land conveyed by this grantor to Joseph P. Souza; from thence running northerly bounded easterly by said land of Joseph P. Souza, two hundred (200) feet for a corner; thence turning and running westerly, bounded northerly by other land of this grantor, eighty (80) feet for a corner; thence turning and running southerly, bounded westerly by other land of this grantor, two hundred (200) feet to King Road; thence running easterly along King Road, eighty (80) feet to the point of beginning, containing sixteen thousand (16,000) square feet of land, more or less."
An examination of this description makes it clear that related to the description used in the deed from Paul for Lot 61A, there is no question that the deed to Lot 61B began at the southeasterly corner of Lot 61B and the southwesterly corner of Lot 61B and the southwesterly corner of 61A, which was exactly the point at which the stone wall met the north side of King Road. The description then follows the dividing line between Lot 61A and 6B to establish the easterly boundary of plaintiff's land.
Although Hingorany did not have the benefit of the Berrett Plan, there is evidence in the field from which the correct boundaries could have been determined. As appears from the Berrett Plan, Berrett set pipes at the northeast and northwest corners of the plaintiff's land as well as the southwest corner of plaintiff's land. There obviously was no need to set a pipe at the southeast corner because a stone wall intersected the northerly boundary of King Road at that point. Hingorany testified that he discovered the pipes at both the northwest and southwest corners of plaintiff's land in doing his survey work. Both surveyors testified that it is the common practice of surveyors to use pipes to mark lot corners. Nevertheless, Hingorany assigned no significance to the pipes.
When there is a conflict between the monuments or boundaries and the distances as given in a description of land being conveyed, the monuments must prevail. Macari v. Marandola, 63 R.I. 369, 382, 9 A.2d 21 (1939). Hingorany, ignoring the pipes that he found and not being aware of the wall as shown on the Berrett Plan, ignored a fundamental principle of surveying that monuments must prevail over distances. Hingorany did not consider the significance of the fact that the distance between the two iron pipes found by him (at plaintiff's southwest and northwest corners) agreed within inches of the dimension in plaintiff's deed of plaintiff's west boundary. Furthermore, he did not consider that the wall base and the edge of the woods ran generally along the line between those two pipes. When taken together, the harmony of location of the monuments and line of possession are a strong indication of the location of a boundary line. Moreover, he did not recognize that the occupation line on the east side of plaintiff's land property (the fence marking the boundary between Lot 61A and plaintiff's land) was essentially parallel with and the approximate deed distance from the two iron pipes found by him on plaintiff's west line. Hingorany chose the "distance call" stating the point of beginning in the deed from Paul of Lot 61A ("265 feet westerly thereon from the northwest corner of Crandall Road and King Road . . .") over the "physical monument" call (the stone wall) in the same deed, despite the fact that the 265 feet dimension was inconsistent with the prior deeds from Paul of Lots 1 and 62 where the total frontage on King Road to reach the southeast corner of Lot 61A was 280 feet. Hingorany admitted that when he discovered a "gap" in the deeds, that he "made a judgment" and "gave the gap" to plaintiff's land. The gap, in fact, is between Lots 62 and 1. The deed to Lot 62 was the first lot deeded from the Paul property and was bounded easterly by other land of the grantor (Lot 1). The Lot 1 was deeded next. That deed stated that Lot 1 was bounded westerly by other land of the grantor in a line parallel to Crandall Road. Therefore, the gap is between Lots 62 and 1. Hingorany incorrectly assumed that Lot 1 is senior and that all lot lines are parallel to Crandall Road.
At trial, Hingorany interpreted an identical "deed call" by Paul, the common grantor, as having two different meanings: Hingorany testified that the deed call for Lot 1 ". . . in the line of said wall . . ." meant along the centerline of the wall, while the "deed call" for Lot 61A ". . . partly in the line of a stone wall . . ." meant parallel to the wall, but not along the wall centerline. Hingorany testified that the monument "along land of Lapointe" in the description of the easterly boundary in the deed to Lot 61A controls over the monument "partly in line of a stone wall" describing the westerly boundary of Lot 61A. The boundary line of Lapointe is not a monument. Rather, the entire Lapointe land is the record monument. As set forth above, the location of Lot 62 (the Lapointe land) is rendered uncertain by the gap. The stone wall marking the westerly boundary of Lot 61A and the easterly boundary of plaintiff's land is a physical monument and a record monument and its location is certain and without error.
Hingorany and Medeiros agreed in one respect: Hingorany held to the stone wall as the line of King Road across the front of defendant's land and admitted that if a stone wall existed across plaintiff's frontage, he would have held to that wall for the line of King Road as well.
Medeiros' findings are based on the wall described as the westerly boundary in the Lot 61A deed description, on the fact that the Lot 61A deed is senior to the deed of plaintiff's land (Lot 61B), and the fact that the Lot 61B deed calls for Lot 61A as the boundary. When Paul deeded Lot 61A, he kept the remaining land west of the wall. There is no question that the stone wall is the west boundary of Lot 61A. Although the wall does not exist today, its location was memorialized by the measurements taken by Berrett and shown on the Berrett Plan. The Berrett Plan shows the wall in question and a wall defining the north line of King Road across the frontage of plaintiff's land. The plan also shows iron pipes and stone walls (along defendant's frontage and west boundary and along King and Crandall Road east of Lot 61A), all of which were located by Medeiros. Medeiros' measurements of the distances and angular relationships between the five iron pipes set by Berrett match within a few inches with the angles and distances shown on the Berrett Plan. From this, Medeiros concluded that he had mathematically determined the location of the stone wall as it existed in 1974 by relating his field work to the information shown on the Berrett Plan. Medeiros did not rely on Berrett's interpretation or opinion as to the location of property boundaries. By reviewing Berrett's work, including the pipes set and locating the stone wall that still exists, Medeiros independently confirmed the distances and angles and the field locations of monuments set and found by Berrett.
When one compares the orientation and location of walls in existence today (as shown on the Medeiros Plan and the Hingorany Plan) with the walls shown on the Berrett Plan, the similarity is striking. The obvious conclusion is that some of the walls have been removed. The fact that the fence marking the west boundary of Lot 61A is in close proximity to the location of the wall shown on the Berrett Plan is also pertinent to that conclusion.
Perhaps the most compelling evidence to support the Berrett Plan is that Berrett shows stone walls that do not agree with deed dimensions and are not even called for in the deeds. If Berrett had not located the stone walls and had, in fact, done a "paper" or "office" survey, then he would not have reported measurements that significantly exceeded the deed dimensions for Lot 61A for lot width and would not have held to the stone wall as the north boundary of Lot 61A which was not called for in the deed and which significantly diminished the deeded lot depth.
Although the common grantor (Paul) had some difficulty with property describing distances and parallel lines, he did recognize that defendant's land was subordinate or junior to all prior deeds. This is evidenced by the fact that while all prior deeds contained distances, the deed to defendant's land from Paul called for boundaries as land of abutters (prior grantees) without any distances.
Accordingly, the Court accepts Medeiros' analysis as being more persuasive than the opinion offered by Hingorany. In conclusion, the Court makes the following findings:
 1. The common grantor, Paul, conveyed Lot 62 first. Next he conveyed Lot 1. In conveying Lot 1, he used as the easterly boundary the line of Crandall Road which was at an angle. Then Paul described the westerly abutter of Lot 1 as being other land of the grantor. This resulted in a gap being created between Lot 1 and Lot 62.
 2. Hingorany discovered the gap, but in starting out with an erroneous reliance on measurements, in ignoring the previous pipes placed by Berrett, and in not being aware of the existence of the Berrett survey, he incorrectly used a distance to establish the easterly boundary of Lot 61A. As a consequence, he incorrectly moved the west boundary of Lot 61A too far to the east, resulting in the west boundary of Lot 61B (the dividing line between the plaintiff's land and the defendant's land) also being moved too far to the east.
 3. Medeiros, on the other hand, found the Berrett Plan. That plan depicted factually where the wall used as the west boundary in the deed of Lot 61A was located and clarified where the boundary was between Lot 61A and 61B. Medeiros checked all of the monuments and the distances called for in the deeds and found that those matched the pipes placed by Berrett at the corners of Lot 61B. This analysis correctly established the location of Lot 61B.
 4. The defendant's deed came last (Parcel 1) and Paul used abutters and not monuments or measurements to describe it.
Thus, the Court finds that the boundary between the defendant's land and the plaintiff's land is as set forth on the survey by Medeiros filed with this Court. Accordingly, this Court finds in favor of plaintiff and directs counsel to prepare a form of judgment for proper recordation establishing the property line between the adjoining properties of the parties as set forth in the survey prepared by Medeiros.