WILLIAM H. GILL et al. *vs*. TOWN COUNCIL OF JAMESTOWN.

JUNE 25, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1) *Highways. Town Councils.*

Although a town council claimed to be acting pursuant to Gen. Laws, 1909, cap. 82, sec. 28, in authorizing commissioners to "survey, bound and mark out" an existing highway, this might have been done by the council, under its powers without reference to chapter 82.

(2) *Highways. Relocating Ancient Lines. Town Councils.*

Narragansett avenue in the town of Jamestown was an ancient highway four rods wide running from sea to sea, from east to west.

Commissioners were appointed to "survey, bound and mark out" that portion of the highway extending from a designated point to the sea.

On the portion of the highway involved there were well defined marks of its southerly boundary consisting at divers points of the remnants of a stone wall. This wall was conclusively fixed by the evidence as the south boundary of the original road.

The commissioners started from the designated point in the northerly line of the highway. From this point westerly a line straight except for slight deviations was drawn following the occupational line, as shown by fences of abutting owners. They fixed the southerly line by running a line to the sea through monuments placed on the land by the owner of the land as the southerly side of the highway as his engineer believed it to exist. These monuments were about two feet to the north of the line of the remnants of the old wall. The result was a highway of varying width.

*Held*, that the layout was not the marking out of an existing way but an alteration of the old way and not the procedure directed by the council.

*Held*, further, that marking out an *existing* way is not done by running lines different from but within existing lines capable of being definitely fixed.

*Held*, further, that the council in this proceeding had no right to approve of an abutter's privately holding a portion of the public way.

*(3)  Highways.  Fences.  Adverse Possession.*

Although fences may have existed for forty years, the owners of the property within them acquired no title to any portion of a highway which had been inclosed within the fence.

*(4)  Highways.  Relocating Ancient Lines.  Town Councils.  Abutting Owners.*

An abutter has rights in the public way, both as a member of the general public and in addition certain special rights, by reason of ownership of land adjoining the way.  As abutters they are entitled to have the whole highway open, and they are not compensated by marking out a highway which gives them more land than they are entitled to and they have standing to object to the action of the town council in so doing.

APPEAL from decree of town council in highway proceedings.  Heard on exceptions of appellee from action of Superior Court granting motion to quash proceedings and exceptions overruled.

BARROWS, J.  On August 27, 1923, three commissioners were appointed by the Town Council of Jamestown "to survey, bound and mark out that portion of Narragansett avenue extending westerly from the westerly side of Ocean avenue to the sea".  These commissioners reported to the Council with a plat and that no one had suffered damages.  After the giving of due notice the Council approved the report by its decree of November 14, 1923.  From this decree Gill and other abutting owners appealed to the Superior Court and after hearing without a jury that court in a carefully considered rescript found that the highway had not been properly marked out and quashed the proceedings of the Town Council.  To the action of the Superior Court granting the motion to quash, the Town Council took exception and the case is now before us on said exception.

The exception is that the court acted contrary to law in quashing the proceedings of the Town Council.  The proceedings relate to the westerly portion of the highway involved in *Horgan* v. *Jamestown*, 32 R. I. 528.  The directed procedure was phrased in this case as in the *Horgan* case.

The Town Council claimed to be acting pursuant to General Laws, 1909, Chapter 82, Section 28, but no pretense is made that the authority given to the commissioners was (1) any more than to "survey, bound and mark out" an existing highway. This might have been done by the Council without reference to Chapter 82 as pointed out in *Horgan v. Jamestown*, at page 532. Because the court found for the Town Council in that case, the Town Council claims that the commissioners' action now in question must be approved. The cases are controlled by different legal principles. The width of the way laid out or whether it followed ancient landmarks was not considered in the *Horgan* case. The question there involved related to accretions at the shore end of a highway running to the sea.

Narragansett avenue is what was formerly known as the Ferry road, the main highway running almost due east and west across the Island of Conanicut. The first appearance of the road was in 1709 (Appellants' Exhibit A), at which time the proprietors carved out a road "fore rod wide". Subsequent confirmation by the legislature and the road's use at the easterly end are set forth in detail in the *Horgan* case. For present purposes it is sufficient to say that Narragansett avenue was an ancient highway four rods wide running from sea to sea. On the portion of it here (2) involved there were well defined marks of its southerly boundary, consisting at divers points of the remnants of a stone wall. This wall had extended westerly at least from opposite the southerly end of Ocean avenue to the top of a bank washed at its foot by the sea on the westerly side of the island. By the evidence the wall was definitely and conclusively fixed as the south boundary of the original Ferry road.

In the *Horgan* case, as before stated, the question involved only the ownership of an accretion to the road at its east end. The vital points in the present case are whether the commission properly carried out its orders, and, second, whether these abutters have any standing to object even if it did not do so.

Did the commissioners mark out an existing way westerly from the westerly side of Ocean avenue to the sea? Ocean avenue runs northerly from Narragansett avenue. It does not extend to the south of Narragansett avenue. The commissioners, therefore, in fulfillment of their task necessarily had to and did fix point A where the northerly line of Narragansett avenue intersected the westerly line of Ocean avenue. Their manner of fixing this point was as follows: At that corner is a hedge but no fence and the commissioners selected a point at the hedge which they considered as the intersection of the two streets and directed the engineer to drive a stake into the ground. From this stake westerly a line straight except for slight deviations was drawn following the occupational line, as shown by the fences of abutting owners on the north side of the road. The departure from a straight line was occasioned by the erection of the fences at different times and not always in exact line with each other. These fences had in some instances existed for forty years but the owners of the property within them, of course, acquired no title to any portion of the highway which had been enclosed within the fence. See R. I. cases cited in the *Horgan* case, at page 538. The commissioners fixed the southerly line of Narragansett avenue by running a line to the sea through monuments placed upon the land in 1914 for the owner of land on the southerly side of Narragansett avenue known as Bungalow Park. These monuments had been placed as markers at the southerly side of the highway, as he believed it to exist, by the same civil engineer who acted for the present committee and with the aid of field notes taken in 1899 by his father, an engineer now dead. These monuments were approximately two feet to the north of the line of the remnants of the old stone wall. The result was a highway 62.7 feet wide at Ocean avenue and Narragansett avenue, 64.3 feet wide at the westerly end at the sea, with intervening widths varying according to occupational lines on the north. Roughly the average width of the way marked out was sixty feet.

The same engineer at the trial marked out on a blue print of the plat accompanying the report of the commission the lines of the same road westerly to the sea, using instead of a line through the Bungalow Park markers, one along the northerly face of the remnants of the old south stone wall and running the northerly line parallel thereto and four rods therefrom. (Appellee's Exhibit 9). The results show that the road by the commissioners marked out gave to abutters on both the north and south side of the way more land than they were originally entitled to and created a road to the west which upon its approach to the sea ran in a more northwesterly direction than the original road. The commissioners carried the northerly line of the old highway to a point marked B well into the sea. They left somewhat uncertain whether they intended to stop on the southerly side at the sea at point D or extend the highway into the sea to point E. The legal obstacles to marking out a roadway across the sea on both northerly and southerly sides of the road need not be considered because the layout of the land portion of the road was clearly not the marking out of an existing way. It was an alteration of the old way at the least and this was not the procedure directed by the Council.

It is urged, however, that the way marked out was already within the lines of the original four rod road and that in consequence no damage was done anyone and that the Council could run the lines within the limits of the four rod road according to actual use. This might be correct, if the commissioners had been ordered so to do. Marking out an *existing* way, however, is not done by running lines different from but within existing lines capable of being definitely fixed. If the lines were outside of existing lines no one would contend that it was the marking out of an existing way. The drawing of the lines by the commission was not an attempt, according to the best obtainable information, to locate the old lines but was the arbitrary creation of new lines. The commission did not use all the evidence at its

command in an effort to duplicate the lines of the old way. One of those lines was definitely fixed by the old wall on the terrain and no attempt was made to survey or mark out this line. The northerly line could have been fixed accurately by measurement and running a parallel line four rods to the north. There can be no question of conflict with occupational lines because, as said *supra*, neither nonuser nor adverse possession can avail to acquire private title within the lines of the original highway. The Council in this proceeding had no power to approve of an abutter's privately holding a portion of the public way. If it is desirable that the lines be changed or altered this can be done by proper procedure. It can not, however, be done under the guise of relocating ancient lines. As said by the trial court, "If the Town Council has power to reduce the width of the highway six feet under the proceeding taken it would have power to reduce it twenty feet and so on *ad infinitum*. The Town Counci has no such power delegated to it."

(4) The question remains whether these abutters have any standing to object to the decree of the Council. It is urged that the laying out of the way so as to give them approximately four feet more of land fronting on the street than they are entitled to does them no damage and hence prevents their right to appeal. The argument is not sound. The legal ancient way was approximately sixty-six feet wide' An abutter has rights in the public way, both as a member of the general public and in addition certain special rights by reason of ownership of land adjoining the way. *Woodruff* v. *Paddock*, 130 N. Y. 618; *Newton* v. *N. Y. R. R. Co.*, 72 Conn. 420; *Ind.* v. *Eberle*, 110 Ind. 542; *Wegner* v. *Kelley*, 157 N W. 206; *Bohne* v. *Blankenship*, 77 S. W. 919 (Ky.); *Dudding* v. *White*, 82 W. Va. 542,

Among the rights of abutters as members of the general public was the right to the reasonable use of the highway to its full extent. Shutting off the public's right to enjoy the use of the whole way or permanently closing off a part of it

under the present procedure created a public nuisance. *Commonwealth* v. *King*, 13 Metcalf 115; *Ackerman* v. *True*, 175 N. Y. 353. Whether, as one of the public merely, these abutters could maintain this appeal we are not called upon to decide. As abutters they are entitled to a special right to have the whole highway open. The width of the street upon which their property is situated is a factor in considering its value. How much difference in value may here exist between a sixty and sixty-six foot street can be determined but it is not compensated by saying to abutters that they are getting more land on their side of the street. It is not for the town to say in this proceeding that complainants are better off. Whether the abutters' reasons for desiring a sixty-six foot street are good or bad, they are entitled to have their property situated upon such a street. The existence of this right clearly gives them standing to object to the present action of the Town Council in marking out the boundaries of Narragansett avenue.

The exception of the Town Council of Jamestown is overruled. The case is remitted to the Superior Court for further proceedings.

*Burdick & MacLeod, Clark Burdick, Edward J. Corcoran,* for appellants.

*Max Levy* for appellee.