GENNARO MACARÌ *et ux. vs.* DOMENICO MARANDOLA *et al.*

NOVEMBER 6, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This cause in equity is before us upon the appeal of the respondent Domenico Marandola, individually and as administrator of the estate of his deceased wife, Caterina Marandola, from the final decree in favor of the complainants, which was entered in the superior court after a hearing upon the pleadings and evidence.

The original bill of complaint was brought by Gennaro Macari and Anna Macari, his wife, against the above-mentioned respondent individually and as administrator as aforesaid. In an amended bill of complaint the town treasurer of the town of Johnston in this state was made a party respondent, as representing that town, and he was brought into the cause by the service of a subpoena upon him, and filed an answer.

After the hearing in the superior court, the justice before whom it was held filed a rescript, in which he found certain facts to be true, in substantial accordance with the allegations of the amended bill. From some of the findings so made, which are amply supported by the evidence, and from our own examination of the exhibits on file and of the

transcript of the evidence, we find the following facts to be established.

On May 31, 1927 the respondent Domenico Marandola and his wife Caterina Marandola conveyed to the complainants, by deed with full covenants of warranty and of freedom from incumbrances, certain real estate in the town of Johnston, which was described in the deed as follows:

"A certain lot or tract of land with all the buildings and improvements thereon situated in the Town of Johnston, County of Providence State of Rhode Island on the northerly side of Plainfield street at the junction with Mill street bounded and described as follows: northerly on the southerly line of Mill street upon which it measures One Hundred twenty-eight and 82/100 (128.82) feet; westerly by land of Antoniele Cinami and wife and land now or formerly of Francesca Martinelli upon which it measures eighty-seven and 71/100 (87.71) feet; southerly on Plainfield street upon which it measures One Hundred ten and 63/100 (110.63) feet."

For this conveyance the Marandolas received from the complainants the purchase price of $6100, made up as follows: $4100 in cash and $2000 in a promissory note of the complainants, secured by a mortgage deed of the property. The complainants regularly paid the interest on the mortgage note until the respondent Marandola, individually and as administrator of his deceased wife's estate, demanded from the complainants the payment of the principal of the note and threatened a foreclosure sale under the mortgage.

Then the complainants, in order to pay this mortgage note, tried to negotiate a loan from the Home Owners' Loan Corporation and found that in order to get such a loan they must procure from a title guaranty company a policy guaranteeing their title to the mortgaged property. This they tried to procure, but were unable to do so, being informed that there was trouble with the property.

At the suggestion of a representative of the Home Owners' Loan Corporation, they employed an engineer, who made them a plat of the property, evidently after surveying it; and this plat, dated March 1935, was afterwards filed as an exhibit at the hearing of the cause in the superior court on its merits. When this plat was furnished by the engineer, it showed that the two dwelling houses, which were on the land and which evidently constitute a large part of the value of the property, were partly on what was shown as Mill street on the plat.

This plat showed one side of the smaller house, which is very near the northwest corner of the lot, as projecting a little over a foot into that street. It showed one corner of the larger house, which is very near the east corner of the lot, as projecting just about the same distance into that street. It showed also a stone wall, connecting the two houses, and a fence in continuation of the wall to the east corner of the lot, both the wall and the fence being shown as located in the street a little over a foot from its south side. Undisputed evidence at the hearing showed that the wall and fence had been in their present locations from a date prior to 1901.

It was because this plat showed the two houses as projecting into Mill street that the complainants were unable to procure a new loan of money on the security of a mortgage on the property. Consequently and because the respondent Marandola insisted upon the payment of the note held by him and threatened a foreclosure sale under the mortgage which he held, the complainants brought this suit.

In the amended bill the principal relief prayed for is that "the respondents be ordered and directed to do whatever is necessary to deliver to the complainants a marketable title in accordance with the Warranty deed delivered to the complainants on the 31st day of May, A. D. 1927"; that "the

respondents be ordered and directed to remove the buildings on said real estate hereinbefore described away from that portion of the highway on, to wit, Mill Street, in the Town of Johnston upon which a portion of said buildings now are located"; that "the respondents be ordered and directed to build and construct cellars on the real estate aforesaid upon which to place said buildings"; and that until these things are done the respondent Marandola, individually and as administrator of the estate of his deceased wife, be restrained from instituting any foreclosure proceedings by virtue of the above-described mortgage.

A temporary injunction for that purpose had been issued and was still in force when the final decree appealed from was entered. The amended bill contained also a prayer for general relief. Besides the facts above stated as having been found, from sufficient evidence, by the justice before whom this cause was heard, or as found by us from the exhibits and transcript, the following facts are established in one or the other of these ways.

The town council of the town of Johnston on April 12, 1901 named and appointed three men as a committee to survey, bound and mark out a new highway forty feet wide beginning at Plainfield street in Thornton village and thence running westerly to the stock house of the Victoria Mills. A warrant accordingly was issued to the committee and in it they were directed, among other things, to agree with the owners of the land to be taken, for the damages which they would sustain, if any, caused by the layout, and to return a report of their doings and a plat of the highway as laid out by them.

On December 13, 1901, at a meeting of the town council, the committee made a written report of their layout of a street, according to the instructions given them, and returned a plat of it, which was made by Sterry K. Luther, who was then both the town clerk and an engineer. By the

report and plat the center of the street was a straight line from a certain location on Plainfield street to the east end of the stock house of the Victoria Mills, and the side lines were described as each twenty feet from and parallel to the center line. The most northern corners of the two houses involved in this cause were shown on this plat as being a little more than eight feet to the north of the south line of the proposed street.

The committee further reported that they had agreed with certain owners of land to be taken for the street, naming them. One of those so named was Marie Antonia Simoni or Simone, who was the mother of the respondent Domenico Marandola and the predecessor of him and his wife in the ownership of the property involved in this cause.

With the report was filed an agreement purporting to be signed by these certain owners, including Marie Antonia Simoni, in which it is stated that they agree with the commissioners that they suffer no damage nor claim any damage in consequence of the layout of this street, and it is added: "we hereby release and forever quitclaim all right title and interest in and to said land taken by reason of said layout, to said Town of Johnston, for street purposes only." At the same meeting at which the above report was submitted, the following vote was passed by the town council immediately after the presentation of the report of the committee: "It is voted that the street be accepted".

The justice before whom the cause was heard found in his rescript that, although the land shown on the committee's plat had not been validly taken, under the statute, for street purposes, yet all of it owned by the signers of the above agreement had become a public street by dedication by these owners, in the agreement and quitclaim executed by them, and acceptance by the public. In so holding he relied mainly on the rule applied by this court in *Simmons* v. *Cornell*, 1 R. I. 519, that for a valid acceptance, by public

user, of an offer to dedicate land for highway purposes, it is not essential that the entire width of the strip of land covered by the offer to dedicate be traveled over by the public; but that it is sufficient that the public has used for travel such portions as it saw fit to use for that purpose.

He therefore concluded "that the parcel of land in dispute", apparently meaning the parcel of land occupied by the complainants on the north side of the line indicated on the committee's plat as being the south line of the proposed Mill street, "is a part of Mill Street, a public highway of the Town of Johnston and that neither complainants nor respondents have any right, title or interest therein as long as the same continues to be a public highway of said Town of Johnston."

He also held, in substance and effect, that the description of the land conveyed, as set forth in the deed to the complainants, covered only land to the south of the south line of Mill street as shown on the committee's plat. He then added this: "The grantees in this deed, ignorant of our language and customs, apparently were not informed that a portion of the buildings, a stone wall and a fence, were not on the land conveyed but were located on a part of the public highway. There is no evidence that any mention was made of this fact."

His conclusions were that it was the duty of the grantors to make a full and fair disclosure to the grantees of the facts as to the location of the buildings, stone wall and fence relative to the street; that the grantors "stood mute and allowed these ignorant complainants to part with their money under a false impression that they were getting more land than the deed purported to convey and they can not be permitted to take advantage of such silence"; and that justice required "that the cost of placing the buildings, stone wall, fence, *etc.* in and upon the land of complainants and off the public

highway in relatively the same condition as they now are, be borne by the respondents."

A decree was later entered, by which certain findings, in accordance with the findings above stated, were made, in substance as follows: that title had been acquired by the town for highway purposes to certain land theretofore owned by Marie Antonia Simoni; that the two buildings standing on the land conveyed to the complainants stood partially on the land before described as having been acquired by the town for highway purposes; and that the stone wall and fence stood wholly on such land acquired by the town.

By this decree the respondent Marandola, individually and as administrator of his wife's estate, was then ordered and directed, at the expense of himself and the estate, to do certain things set forth in great detail, the substance being to move the two buildings back so as to be wholly on land belonging to the complainants and to provide new foundations and cellars for them, and to fill in the abandoned portions of the cellars and to remove the stone wall and fence back so that they will be just inside the northern boundary line of the complainants' land. It was also ordered that when this work was completed to the satisfaction of the court, the respondent could enforce the note and mortgage held by him but that meantime he was enjoined from enforcing them.

The respondent Marandola filed an appeal from this decree. The only grounds of appeal which we need to consider are that the decree and the decision upon which it is based are against the law and that they are against the weight of the evidence.

We agree with the statement by the justice of the superior court in his rescript that it is admitted by all parties that the requirements of the statute to perfect the condemnation of the land for Mill street were not complied with and that

structures on the land in question were never legally removed from the proposed highway but have remained thereon since 1901. Therefore no part of that land became part of a public highway by condemnation in the proceedings in 1901.

We must, however, consider whether the disputed parcel of land, *i. e.*, the land between the south line of Mill street, as indicated on the committee's plat, and the north occupation line of the complainants and their predecessors in title since a date before 1901, became a part of a public highway in any other way. In support of a contention that it did, reliance must be had on the paper, in the form of an agreement and release, which was filed by the committee with its report and purported to be signed by Marie Antonia Simoni.

As to this paper there was uncontradicted testimony that Marie Antonia Simoni could not write even her name, and there was no evidence that what purported to be her signature, on the paper in the form of an agreement and release filed by the committee with its report, was actually her signature. Even if it was, we are of the opinion that the paper could not operate, as against the complainants, as a conveyance to the town for street purposes of any of her property. It was not acknowledged and was not recorded in the records of land evidence in the town. Therefore it could not be effective as against the complainants, who were *bona fide* purchasers of the property, without notice of such paper or of anything which would put them upon notice that the town or the public had any right in or over land south of the occupation line of the Marandola property as indicated by the buildings, wall and fence. Nor could it, as a deed to the town of land for highway purposes, answer the requirements of G. L. 1896, chap. 71, sec. 25, now G. L. 1938, c. 72, §25.

The next question to be considered is whether the disputed parcel of land became a part of a public highway because the paper purporting to be signed by Marie Antonia Simoni constituted an offer by her to dedicate this parcel to public use for highway purposes and this offer was accepted by the action of the town council which was taken when the report of the committee was presented, with that paper annexed, and which was recorded thus: "It is voted that the street be accepted." We have been able to find no statutory provision that governs the effect to be given to that vote.

The question whether an offer to dedicate land for highway purposes can thus be validly accepted by such a vote of a town council came before this court and was decided in the negative in *Remington* v. *Millerd,* 1 R. I. 93. In that case it was held that to establish a highway by *dedication,* there must be not only an *intent* on the part of the owner to devote it to the use of the public for highway purposes, but there must also be an *acceptance* on the part of the public; that to establish such acceptance by *use,* that must be clearly proved; and that the fact that a town council has declared the dedicated land to be a highway and has ordered it to be repaired at the expense of the town is not evidence of an acceptance by the public, because the town council is not to be deemed the agent of the public for that purpose.

In *Eddy* v. *Clarke,* 38 R. I. 371, at 381, 95 A. 851 (855), the above case is referred to, with apparent approval, as follows: "In *Remington* v. *Millerd,* 1 R. I. 93, the declaration by a town council that a certain way was an open highway was held to be without binding force unless the way had been actually used as a highway for twenty years."

The case is again cited by this court in *Marwell Const. Co.* v. *Mayor & Board of Aldermen,* 61 R. I. 314, 200 A. 976, at 979, thus: "In *Remington* v. *Millerd, supra,* the court, in

discussing the powers and acts of a town council in connection with the acceptance of a certain way, implied that the necessary authority might be conferred by a statute."

In *Hughes* v. *Providence & Worcester R. R. Co.*, 2 R. I. 493, at 499, this court says: "To make a highway by dedication, there must be the assent of the owners of the land to its appropriation for a public highway, and its use by the public for such purposes, and for such a length of time, that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." This language is quoted with approval in *Union Co.* v. *Peckham*, 16 R. I. 64, at 65.

We are therefore of the opinion that the disputed parcel of land did not become a part of a public highway by an offer by Marie Antonia Simoni to dedicate it for highway use and an acceptance of such offer by the action of the town council.

The final question for consideration on this phase of the cause is whether the disputed parcel of land became a part of Mill street by an offer by Marie Antonia Simoni to dedicate it to public use for highway purposes and an acceptance of that offer by public use in accordance with the rule above stated as laid down in *Hughes* v. *Providence & Worcester R. R. Co., supra.* In order to answer that question a further examination of the evidence seems to us necessary.

The plat which was filed with the committee's report and which was introduced as an exhibit at the hearing of the cause on its merits shows the proposed street as forty feet wide and shows a straight black line which appears to be somewhere about seven feet north of the south line of the proposed street and to be intended to represent the northern property line of the three lots on the south side of the street at its easterly end, including the most eastern lot, which is marked as that of "Maria De Simono", evidently the same as Marie Antonia Simoni. This plat indicates the most

northern corner of each of the houses on the Simoni lot as projecting just a little more than a foot to the north of this "property line". It indicates the north side of the house on the lot next west as being about a foot to the south of this "property line".

When this plat is compared with the engineer's plat above mentioned, dated March 1935, it is obvious that what is shown on the latter plat as the south line of Mill street is the same or practically the same as the *property* line of the lots on the south side of that street as indicated on the committee's plat. This conclusion is made clearer by the fact that although the width of Mill street as shown on the engineer's plat is not marked thereon, it is, according to scale, about thirty-three feet only.

Mr. Luther, who made the committee's plat, testified that Mill street before the layout of 1901 was a traveled road and wide enough for buggies to pass each other and that there was a lot of traffic on it and that the committee was widening it. He first referred to the above-mentioned straight black line as being "the old line of Mill street before the widening". Later he testified that this line might be the line of the property plat. Our view is that it was meant to be both in general, but that it clearly did not accurately represent the occupation line between the Simoni property and the way as used by the public, because a part of each of the houses was to the north of it, and the wall and fence must also have been to the north of it. No evidence was introduced that it represented the true property line there or that any part of the land between this straight line and the true occupation line ever became a part of Mill street before the attempted condemnation in 1901.

Mr. Luther testified, without being in any way contradicted, that there never actually was any widening of Mill street there, though he thought that farther west, toward the stock house, there were lines moved over to the new line. He

then added: "But, of course, they couldn't travel on that street where the houses are."

From a consideration of the evidence in the cause, we are of the opinion that it would not support a finding that Marie Antonia Simoni signed the paper in the form of an agreement purporting to bear her signature and thereby offered to dedicate the parcel of land in dispute in this cause for highway purposes, in view of the facts that according to uncontradicted testimony she could not sign her name and that by the terms of the paper she was to receive no consideration, although parts of two houses belonging to her were on this land and there was no provision for removal of these houses therefrom without expense to her.

We are also of the opinion that the evidence would not support a finding that any part of the parcel of land was afterwards used by the public for highway purposes or a finding that at the time of the attempted condemnation proceedings she owned any land to the north of this parcel. We therefore cannot see any reason for applying here the rule above mentioned which was applied by this court in *Simmons* v. *Cornell*, 1 R. I. 519, and on which the justice by whom the present cause was heard relied, as above stated, in finding that this parcel had become a part of a public street by dedication and public acceptance.

We therefore find that the justice erred in his finding; and that no part of the parcel of land in dispute became a part of Mill street. According to the evidence, then, the respondent Marandola and his wife, at the time of their deed to the complainants, owned the land as far north as the line above described as the "occupation line" of the property of Marie Antonia Simoni, free and clear of any right of the public to use any part of it for highway purposes, and that line was the boundary line between the property of the Marandolas and Mill street.

The superior court justice in his rescript said: "The deed from respondent and his wife to the complainants gave title only to the land remaining after the portion needed for the new highway was taken. The deed was made by the Town Clerk of Johnston as notary and he, apparently, drew his description by courses and distances carefully so that no land in Mill Street would be conveyed." This language is not quite clear, but it seems to us that the justice meant by it that the town clerk, who acted as draftsman, intended to draw the description, of the land to be conveyed, in such a way that it would cover no land north of the south line of Mill street *as indicated on the committee's plat*.

But the language actually used, as applied to the facts of the case and as construed according to pertinent rules of construction, and not what was in the mind of the draftsman, must govern. The well-settled rule should be applied that when there is a conflict between the monuments or boundaries and the distances, as given in a description of land being conveyed, the monuments or boundaries must prevail. *Co-operative Building Bank* v. *Hawkins*, 30 R. I. 171, 73 A. 617; *Di Maio* v. *Ranaldi*, 49 R. I. 204, 142 A. 145.

In the former of these cases this court, at page 182, said: "And as a general rule, known and fixed monuments and boundaries will control courses and distances, and metes and bounds expressed with certainty will include the land within them." And at page 183 it said: "The call for the west line bounded by the land of H. Conant must have controlling force in the nature of a monument. An existing line of an adjoining tract may as well be a monument as any other object." In the latter of these cases cited, this court, at page 206, used language to the same effect.

In the former case the deed in question purported to convey certain land, by a description which was not very clear and definite, "together with all the buildings and improvements thereon." And with reference to this quoted language

this court, at page 180, said: "While these words alone can not be permitted to extend the grant and to override the definite calls of the description, such words may be considered with advantage in determining the intention of the parties . . . . When the boundaries set out in the description are not definite, this and similar expressions may be given legal effect." The pertinency of this language to the problem now before us seems obvious.

Applying these rules to the description in the deed to the complainants, we are of the opinion that, by reason of the conclusions which we have above drawn from the evidence, this description should be so construed as to make the northern boundary of the land conveyed the south line of Mill street, not as that line is indicated on the plat filed in the abortive condemnation proceedings, but as used by the public for highway purposes. This would make the northern boundary line of the land conveyed the occupation line of the Marandola property as shown by the buildings, stone wall and fence. That is what any purchaser of the property, who bought it after viewing the premises, would believe he was getting under that description; and he would not be required to measure the boundary lines to see whether the lengths as given in the description were consistent with the boundaries.

The complainants have not, in our judgment, presented any evidence which shows that they did not receive good title to the land as far north as that occupation line or that any part of either of the houses is on land included in a public street. Nor has such evidence been presented by the town, which is substantially a party to the suit, being represented by its treasurer. Nor do we find that any evidence was presented which indicates that the town or any private owner, other than the complainants, has any title or interest in or over any of the land in dispute in this cause which is covered by any part of the complainants' buildings or which is to

the south of the complainants' line of occupation as shown by the buildings, stone wall and fence, a line which has been the occupation line of the complainants and their predecessors in title for over thirty-eight years.

Our conclusion then is that the appeal of the respondent Marandola must be sustained and the decree reversed. But, as the title to certain land is involved in the cause and has been decided in this opinion, and the amended bill of complaint contains a prayer for general relief, it may well be that the final decree to be entered should not be one simply dismissing the complainants' bill of complaint.

The appeal of the respondent Marandola is sustained and the decree appealed from is reversed. On November 15, 1939, the parties may present to us a form of decree, in accordance with this opinion, to be ordered to be entered in the superior court.

*Benjamin Cianciarulo, Angelo Cianciarulo, Edward A. Capomacchio,* for complainants.

*Edward M. Sullivan, John J. Sullivan,* for respondent Marandola.

*Arthur N. Votolato,* Town Solicitor, *Albert N. Tavani,* for respondent Town of Johnston.