DECISION *Page 1 
Appellants Lorna Wright, Executrix of the Estate of Dorothy Hutchinson, and Donna Stephen bring this appeal from a decision of the Town of New Shoreham Zoning Board of Review ("the Board"). The challenged decision upheld a Notice of Violation issued to Appellants on the ground that the transfer of certain real property constituted an illegal subdivision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts
In January 2008, the Estate of Dorothy Hutchinson held title to certain real property, identified as Lot 11 on Town of New Shoreham Tax Assessor's Plat 37, but also identified by deed as "three adjoining lots or parcels of land" (hereinafter "the Property").[1] In order to distribute the Property among those who stood to inherit from Dorothy Hutchinson, Appellants submitted an application to the Town Planning Board seeking to subdivide the Property into three parcels. On January 14, 2008, Appellants withdrew their application. *Page 2 
On January 16, 2008, the Estate of Dorothy Hutchinson purported to transfer title to two of the three lots[2] that allegedly comprise the Property. Lot 1, a 4.22 acre parcel with approximately 400 feet of frontage on Center Road, was conveyed to Lorna Wright and Donna Stephen as tenants in common. Lot 2, a 4.59 acre parcel with some frontage on Cooneymus Road[3] and access by private roadway, was conveyed to Brian Wright. Lot 3, a 1.09 acre parcel with approximately 600 feet of frontage on Center Road and Cooneymus Road, remained in the Estate of Dorothy Hutchinson. These lots were set off from one another by a series of non-continuous stone walls.
On February 13, 2008, Marc Tillson, the Building Official of the Town of New Shoreham, issued a Notice of Violation to Appellants on the ground that the transfer of Lots 1 and 2 constituted an illegal subdivision of the Property. Appellants appealed the Notice of Violation to the Board.
On April 28, 2008 and July 28, 2008, the Board held hearings regarding the propriety of the Notice of Violation. At these hearings, a variety of witnesses testified.
The Building Official testified that he had not researched the title to the Property but had instead relied on the Tax Assessor's designation of the Property as a single lot in issuing the Notice of Violation. (Apr. 28, 2008 Tr. at 5-9.)
Attorney Elliot Taubman testified that he had been a real estate attorney working exclusively in New Shoreham since 1973. (Apr. 28, 2008 Tr. at 15-16.) Attorney Taubman testified that he had conducted a title review on the Property. Id. at 17-18. He testified that the *Page 3 
first recorded deed to the Property was from 1958 and that this deed purported to convey a "certain tract of land consisting of three adjoining lots or parcels of land lying West of the New State Highway. . . ." Id. at 17-19, Ex. E. He testified that the second recorded deed to the Property was from 1982 and that this deed contained an identical description. Id. at 20-22, Ex. F. He testified that, although the "three adjoining lots" were not separately described by metes and bounds, these lots could be determined by reference to stone walls on the Property. Id. at 20-28. He testified that not only did local customs and usages inform a finding that these stone walls bounded the three distinct lots, but also the 1967 Zoning Ordinance of the Town of New Shoreham ("the 1967 Ordinance") provided at Article VI, § 2 that "[a]ll lots, tracts and parcels of land which prior to the adoption of this ordinance have been enclosed within stone walls or fences shall be considered a duly lot of record as if they were recorded in the office of the Town Clerk of the Town of New Shoreham."Id. (emphasis in 1967 Ordinance). Attorney Taubman concluded his testimony with the opinion that both custom and the 1967 Ordinance dictate that the Property is comprised of three distinct lots of record.Id. at 36.
Stephen Pinch testified that he had been a registered land surveyor in Rhode Island since 1995. (Jul. 28, 2008 Tr. at 26.) Mr. Pinch testified that he was familiar with using stone walls to conduct surveying work.Id. at 28. He testified that he had prepared a plan showing the stone walls that define the three lots. Id. at 27, Ex. J. He testified that, although the stone walls on the Property contained some breaks, most if not all stone walls contain some breaks. Id.
at 28. He testified that he is able to determine bounds by reference to non-continuous stone walls, and that he did so in order to determine the bounds of the lots that comprise the Property. Id. He testified that he had reviewed maps from the United States Geodetic Survey and New Shoreham Town *Page 4 
Hall. Id. at 30. He testified that these maps both showed the stone walls as continuous and demonstrated that the walls were fifty to one hundred years old. Id.
No other testimony forms the basis for either the Board's Decision or this appeal.
On December 29, 2008, the Board issued a decision rejecting the appeal and upholding the Notice of Violation ("the Decision"). The Decision rested on twenty-seven findings of fact, presented here in their entirety (all punctuation and capitalization reflect the original):
 1. The Notice of Violation addresses the recording of two deeds on the Land Evidence Records of the Town of New Shoreham on January 16, 2008 which divided, and changed the ownership, of Tax Assessors Play 16 Lot 11 into three separate Lots, all of which were originally included within the area encompassed by Lot 11. (Building Official's Exhibit 1 and Appellants' Exhibit G and Exhibit H)
 2. The thrust of the Notice of Violation is that the creation of three Lots by the owners, from one, was an illegal subdivision in violation of state law (Rhode Island General Laws Title 45 chapter 23) and the Town's Land Development and Subdivision Regulations and Zoning Ordinance, which requires Planning Board approval of any subdivision of property and that any subdivision comply with the Zoning Ordinance.
 3. The Hutchinson family acquired the subject property by a single deed, from George A. Hull and his wife Mary J. Hull to Henry G. Hutchinson, dated May 31, 1958 (Exhibit E).
 4. The subject property was later conveyed by Henry G. Hutchinson to himself and to his wife, Dorothy Hutchinson, by deed, dated December 15, 1982. (Exhibit F) This deed contains the same description as the 1958 deed from Hull to Hutchinson.
 5. There are no descriptions, on record in the land evidence records for the Town of New Shoreham pertaining to the subject property, prior to 1958.
 6. At the time of the 1958 conveyance of the subject property to Henry Hutchinson, the Town of New Shoreham did not have a Zoning Ordinance. *Page 5 
 7. On June 5th 1967 the Town of New Shoreham enacted its first zoning ordinance.
 8. The 1967 zoning ordinance zoned Lot 11 as in the Residential Zone A.
 9. The 1967 Zoning Ordinance required that all lots in the Residential A Zone have a minimum Lot Size of 80,000 sq feet of land and a Minimum Street Frontage of 200 feet.
 10. Section 2 of Article IV of the 1967 Zoning Ordinance states that "All lots, tracts, and parcels of land which prior to the adoption of this ordinance have been enclosed within stone walls or fences shall be considered a duly lot of record as if they were recorded in the office of the Town Clerk of the Town of New Shoreham."
 11. The Appellants' are relying upon this portion of Section 2 of Article IV of the 1967 Zoning Ordinance to support their appeal.
 12. Section 2 of Article IV of the 1967 Zoning Ordinance also contained a merger provision for abutting substandard lots held in same ownership.
 13. Article IV, Section 2, was repealed by the Town of New Shoreham on May 1, 1972, prior to the 1982 deed of conveyance from Henry Hutchinson to Dorothy Hutchinson, and himself.
 14. The Appellants presented the testimony of Attorney Taubman to support their appeal. I do not find his testimony to be credible. To accept his testimony you have to accept a concept that lots exist because people think they exist. For example, if you put a fence around your garden to keep the deer out, and called it your garden lot, it became a legal building lot.
 15. The appellants presented no evidence that the owners of Lot 11 had taken any action in reliance upon the newly enacted 1967 Zoning Ordinance, between the time it was enacted and the time Section 2 was repealed.
 16. It is of note, although the Appellants argue that it is not legally binding, that no evidence was presented to show that, at any time was the property ever identified upon the Tax Assessor's maps, or records, as anything more than one lot. The owners of the property have never paid taxes on more than one lot. *Page 6 
 17. Mr. Pinch, the Appellants' land surveyor testified that he found no evidence that three lots were actually enclosed within stone walls or fences as of June 5, 1967, or any time subsequent thereto. Indeed, Mr. Pinch references the stone walls on his survey as only "existing stonewalls as possible boundaries" (Exhibit J).
 18. On the subdivision plan, submitted as Appellants Exhibit J, the interior stone walls do not meet and do not enclose any entire area of proposed Lots 1, 2 or 3.
 19. Neither Lot 1 or lot 2 have now, or at any time have had, street frontage of 200 feet.
 20. Section 102 of the Zoning Ordinance, in effect as of January 16, 2008, defines a lot as "[a] parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title.
 21. The Appellant, Lorna M Wright, Executrix, filed an application in December of 2006 for a three Lot subdivision for Plat 16, Lot 11 (Building Official Exhibit 2). That Application identifies the property proposed to be subdivided as "Assessor's Plat: 16 Lot: 11 Parcel: ___ ". It is of particular note that the property has no "parcels" as set forth in this Application.
 22. That Subdivision Application was withdrawn by letter from Appellants' attorney dated January 14, 2008, two days before the deeds subdividing the property were recorded (Building Official Exhibit 3).
 23. Although the attorney was asked the reason at the hearing, he declined to answer the question.
 24. The 1958 and 1982 deed (Exhibits E and F, respectively) both describe boundaries encompassing an approximate area of 9.7 acres. These deeds do not describe interior boundaries for the parcels designated as Lots 1, 2 and 3 by the Pinch survey and the Hutchinson family deeds.
 25. Under current zoning, Plat 16, Lot 11 is located in the Residential A zone.
 26. Under the zoning Ordinance in effect at the time of the recording of the subdivision deeds, a minimum of 90,000 sq. ft *Page 7 
of developable land and 200 feet of frontage were required for each Lot in the Residential A Zone.
 27. The Lots created by the Appellants, by the recorded deeds, do not meet these minimum requirements and no Planning Board approval for variances have been received by the Appellants for the creation of these nonconforming Lots.
Although the Board did not explicitly find that the Property is comprised of only one lot, that finding is implicit in a number of the Board's findings and in the Board's conclusion.
On January 5, 2009, Appellants timely appealed the Decision to this Court.
 II Standard of Review
Section 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State LaborRelations Board, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977);see also Mauricio v. Zoning Board of Review of the City ofPawtucket, *Page 8 590 A.2d 879, 880 (R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts a de novo review of that issue. Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005).
As to this Court's review of a zoning board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v.George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quoting Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (internal quotations omitted). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Id. In short, a reviewing court may not substitute its judgment for that of the board's if the court "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v. Crowe,841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 III Analysis
Appellants base their Appeal on the purported existence of three separate lots that comprise the Property.[4] To support their position, Appellants look to a number of circumstances, including the reference to three lots in the deed to the Property, the existence of stone walls dividing the Property into three lots, and the 1967 Ordinance Art. VI, § 2 provision that areas enclosed by stone walls shall be designated lots of record. The Board counters that the *Page 9 
stone walls here do not clearly divide the property into three lots because they contain gaps, that the deeds do not contain a sufficiently specific definition of the purported three lots, and that if the three lots ever did exist then they merged by operation of law. The Court will first address the question of whether there are three separate identifiable lots and will then turn to the question of whether such lots merged by operation of law.
As a preliminary matter, the Court finds it appropriate to provide some context for the issue of whether the Property is comprised of one lot or three lots. General Laws 1956 § 45-23-59(b) provides:
 Violation of the regulations include [sic] any action related to the transfer or sale of land in unapproved subdivisions. Any owner, or agent of the owner, who transfers, sells or negotiates to sell any land by reference to or exhibition of, or by other use, a plat of the subdivision before the plat has been approved by the planning board and recorded in the municipal land evidence records, is in violation of the local regulations and subject to the penalties described in this chapter.
Section 45-23-32 defines a "subdivision" as "[t]he division or re-division, of a lot, tract or parcel of land into two or more lots, tracts, or parcels." Here, Appellants transferred Lots 1 and 2 without Planning Board approval. If the Property was comprised of only one lot, then Appellants' unauthorized transfers of so-called Lots 1 and 2 are illegal subdivisions. If the Property was comprised of three lots, however, then no subdivision occurred at all, and the Board's decision to affirm the notice of violation constitutes an error of law.
In order to address the issue of whether there are three lots or only one, this Court must begin with the definition of "lot" under Rhode Island law. General Laws 1956 § 45-24-31(38) defines the term "lot" as either:
 (i) The basic development unit for determination of lot area, depth, and other dimensional regulations; or *Page 10 
 (ii) A parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title.
Thus, in determining what constitutes a lot or lots, § 45-24-31 directs that the Court turn to "some legal instrument such as a recorded deed. . . ." Before moving on to the deeds that are relevant here, however, a review of some black letter law regarding the operation and construction of deeds will be helpful.
"To construe a deed, a court looks first at the language of the instrument because the court presumes it declares the intent of the parties. When, and only when, the meaning of a deed is not clear, or is ambiguous or uncertain, will a court resort to established rules of construction. . . ." 23 Am. Jur. 2d Deeds § 192 at 201. "It is to be assumed that the parties to a deed intend each of its provisions to have some effect. . . . Every word, sentence and provision, if possible, is to have effect, and a construction which requires rejection of an entire clause is not to be admitted, except in cases of unavoidable necessity." Id. § 198 at 206-07. "Since a valid and sufficient description of lands intended to be conveyed by deed may rest on identification extrinsic to the instrument, extrinsic evidence is admissible for this purpose. . . ." Id. § 259 at 244.
Here, the only recorded deeds to the Property refer to "that certain tract of land consisting of three adjoining lots or parcels of land lying West of the New State Highway. . . ." The deeds unambiguously refer to the existence of three lots, but the precise bounds of those three lots remain entirely undefined. Overall, therefore, the reference to three lots is ambiguous and uncertain, thus requiring that the Court turn to the aforementioned rules of construction. See
23 Am. Jur. 2d Deeds § 192 at 201. The rules of construction dictate that the Court must presume that the reference to three lots was intended to have some effect, and must construe the deeds to *Page 11 
have conveyed three distinct lots if possible.[5] Seeid. § 198 at 206-07. Because the deeds do not explicitly define these three lots, however, the Court will look to extrinsic evidence to determine whether the boundaries of these three lots are ascertainable.See id. § 259 at 244.
The Rhode Island Supreme Court has noted that a boundary may be "definitely fixed by [an] old wall on the terrain." Gill v. TownCouncil of Jamestown, 47 R.I. 425, 133 A. 806, 808 (1926). Indeed, stone walls are commonly used in deeds to describe boundaries.See, e.g., Anderson v. Town of East Greenwich,460 A.2d 420 (R.I. 1983); Lee v. Raymond, 456 A.2d 1179 (R.I. 1983);Thomas v. Ross, 119 R.I. 231, 376 A.2d 1368 (1977). Even in the presence of ambiguous or conflicting deed language, stone walls can serve as evidence of ill-defined boundaries. See Sorel v.Miller, 73 R.I. 16, 53 A.2d 332 (1947) (holding that a deed which described no bounds except "the pipe line" was bounded on three sides by stone walls but that the fourth side was unascertainable because a broken stone wall conflicted with the apparent pipe line); see alsoMacari v. Marandola, 63 R.I. 369, 9 A.2d 21 (1939) (holding that despite a deed description referencing a public street as a boundary, the deed actually transferred land bounded by a stone wall which was located within the public street).
Here, the deed makes reference to three lots. The only evidence of the bounds of those lots is the existence of a series of stone walls that map out three lots. There is nothing in or outside the deed to indicate that the bounds of the lot are anything other than these stone walls.Cf. Sorel, 73 R.I. at 17, 53 A.2d at 332 (construing a deed which provided that "the pipe line" was a boundary); Macari,63 R.I. at 369, 9 A.2d at 22 (construing a deed which provided that *Page 12 
Mill Street was a boundary). Accordingly, the only rational conclusion that can be drawn is that the stone walls define the bounds of the three lots.
The Board argues that the stone walls at issue here are not continuous and, therefore, that the walls cannot delineate the boundaries of lots. The Board so argues with reference to the 1967 Ordinance, which provides at Article VI, § 2 that "[a]ll lots, tracts and parcels of land which prior to the adoption of this ordinance have been enclosed within stone walls or fences shall be considered a duly lot of record as if they were recorded in the office of the Town Clerk of the Town of New Shoreham." (Emphasis in original.) This Court notes that regardless of the applicability of the 1967 Ordinance, and regardless of whether the lots are "enclosed" by stone walls, the common law of deed construction provides plain grounds for determining that the Property is comprised of three lots as bounded by stone walls. Nevertheless, this Court will briefly address the Board's argument.
In support of its contention that the stone walls at issue cannot as a matter of plain language "enclose" the purported lots, the Board takes the Court on a tour of Webster's Dictionary. As cited by the Board, Webster's Dictionary defines "enclose" as "to surround on all sides" then defines "surround" as "to encircle on all sides of simultaneously."See Board's Memorandum at 14 (quoting Webster'sDictionary). The Board notes that the lots at issue here are not fully surrounded or encircled by stone walls. The Board goes on to argue that "[c]ertainly it is not conceivable that enclosed areas, meant for livestock, would have such significant openings in the surround."Id. Rhode Island law, however, proves the Board wrong.
In Wilbur v. Gross, 55 R.I. 473, 182 A. 597, 605 (1936), the Rhode Island Supreme Court held that a stone wall with an opening for a driveway defined an enclosure. The Court specifically stated that although there was "an opening between the end of a boundary stone wall *Page 13 
on one side and the end of a boundary steep bank on the other side[,] . . . this opening did not prevent these premises from being the `enclosure' of the defendant." Id. Accordingly, the Court held as a matter of law that the area within this non-continuous stone wall was "the defendant's `enclosure'. . . ." Id. Therefore, a stone wall may contain openings and still enclose a parcel of property — and define a boundary — as a matter of law. The Board's resort to plain language affords it no support.
Because the stone walls at issue here define the boundaries of three lots within the Property (notwithstanding the fact that there are some gaps in these walls), this Court holds that the Property is comprised of three lots bounded by the aforementioned stone walls. "It is well established that what are the boundaries of land conveyed by a deed is a question of law. . . ." Waldman v. Town of Barrington,102 R.I. 14, 20, 227 A.2d 592, 595 (1967) (citing Co-operativeBuilding Bank v. Hawkins, 30 R.I. 171, 187, 73 A. 617 (1909)). Therefore, the Board's implicit conclusion that there was only a single lot on the ground that the stone walls did not define the boundaries of three lots[6] constitutes an error of law.
However, the Court's inquiry does not end here. Appellants are only entitled to reversal if the Board's error was prejudicial. If the three lots merged by operation of law, then there can be no prejudice because the Board's overall decision was correct — in 2008, there was only one lot, so Appellants' transfers constituted an illegal subdivision. Accordingly, the Court must now determine whether the lots did merge by operation of law.
The parties dispute the general effect of 1967 Ordinance Article VI, § 1 and its applicability to these facts.[7] Article VI, § 1 provides that: *Page 14 
 No lot area shall be so reduced that yards, total area, and lot frontage shall be less than prescribed for the district in which the lot is located. No yard or open space provided around any building for the purpose of complying with the provisions of this ordinance shall again be used as a yard or open space for any other building.
 Where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this ordinance which was a lot of record on the effective date of this ordinance may be used for a single family dwelling provided such lot has a minimum area of 20,000 square feet in Residential A zone, 10,000 square feet in Residential B zone and 10,000 square feet in Residential C zone. All yard dimensions of such a lot shall conform to the provisions of the zones in which they are located.
The Board contends that Article VI, § 1 compelled the merger of Lots 1, 2, and 3 into a single lot because Lot 2 does not meet the frontage requirements of the Ordinance. Appellants argue that if Article VI, § 1 is a merger provision at all, it is only a "mini-merger" provision which applies to undersized lots and not to Lots 1, 2, and 3.
On the initial question of whether the disputed Article VI, § 1 is a merger provision, the Court is constrained by precedent to conclude that it is. In the case of R.J.E.P. Associates v. Hellewell,560 A.2d 353, 355 (R.I. 1989), the Court construed a nearly identical provision[8] in the Jamestown Ordinance as a merger provision. There, the Court held that the provision at issue "clearly provides for the merger of substandard lots that are contiguous and share ownership."Id. The only distinction between the Ordinance provision at issue here and the one construed by the Court in R.J.E.P. Associates is so miniscule that it does not allow for any substantive distinction between the two provisions — the former uses the word "frontage" where the latter *Page 15 
uses "width." See id. Therefore, R.J.E.P. Associates
constrains this Court to recognize that the provision at issue here is also a merger provision.[9] See id.
The Court's final inquiry is whether the lots at issue actually trigger the merger requirement. Courts are bound to "give clear and unambiguous language in an ordinance its plain and ordinary meaning."Cohen v. Duncan, 970 A.2d 550, 562 (R.I. 2009) (citingPawtucket Transfer Operations, LLC, 944 A.2d 855, 859 (R.I. 2008)). "[W]hen the language of a statute or a zoning ordinance is clear and certain, there is nothing left for interpretation and the ordinance must be interpreted literally." Id. (quoting Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981)). However, ambiguity in an ordinance presents a different situation. "Zoning ordinances are in derogation of the common-law right of the owner as to the use of his property and must therefore be strictly construed." Earle v. ZoningBd. of Review of City of Warwick, 96 R.I. 321, 324-25,191 A.2d 161, 164 (1963) (citing Lamothe v. Zoning Board of Review,81 R.I. 96, 101, 98 A.2d 918, 920 (1953)). "In determining restrictions upon an owner's use of his property in instances where doubt exists as to the legislative intention, the ordinance should be interpreted in favor of the property owner." Id. (citing generally United CerebralPalsy Ass'n of Philadelphia and Vicinity v. Zoning Board ofAdjustment, 382 Pa. 67, 114 A.2d 331, 52 A.L.R.2d 1093 (1955)). Therefore, if the Ordinance is ambiguous as applied to these facts, then this Court must strictly construe its provisions in favor of Appellants and hold that no merger occurred. See id. *Page 16 
Here, the merger provision that remained in effect from 1967 to the time of the transfer is ambiguous as applied to these facts.[10] To reiterate, the merger provision is as follows:
 No lot area shall be so reduced that yards, total area, and lot frontage shall be less than prescribed for the district in which the lot is located. No yard or open space provided around any building for the purpose of complying with the provisions of this ordinance shall again be used as a yard or open space for any other building.
 Where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this ordinance which was a lot of record on the effective date of this ordinance may be used for a single family dwelling provided such lot has a minimum area of 20,000 square feet in Residential A zone, 10,000 square feet in Residential B zone and 10,000 square feet in Residential C zone. All yard dimensions of such a lot shall conform to the provisions of the zones in which they are located. 1967 Ordinance Art. VI § 1.
This provision is hardly a model of clarity. The first sentence of this provision appears to restrain individuals from reducing lots in a manner that does not comply with the dimensional restrictions of the Ordinance. The second sentence seems to suggest that for purposes of determining compliance with dimensional restrictions, open space may not be considered in such a way that it overlaps or counts for multiple parcels. The third provision allows pre-existing, non-conforming lots of record to be used for single family dwellings. The fourth sentence provides that pre-existing, non-conforming lots of record must comply with the yard dimensional requirements of the Ordinance. Only when read holistically does this provision require the merger of contiguous undersized lots. It would stretch the language of the Ordinance too far, *Page 17 
however, to compel the merger of adjacent lots based on their failure to comply with frontage requirements.[11]
Indeed, the merger provision is ambiguous as applied to these facts in large part because merger based on frontage alone is relatively rare. There is no Supreme Court case in Rhode Island upholding a challenged merger based on frontage alone. The absence of any such case supports this Court's conclusion in two ways. First, it is unlikely that an Ordinance would call for a relatively rare result without setting forth such a result in definite terms. Second, in the absence of any case law, the Ordinance lacks any extrinsic evidence to guide in its interpretation. In other words, if it were commonly accepted that language like that used in the Ordinance provides for the merger of lots with insufficient frontage, then no more definite language would be necessary to achieve such a result. Absent any such extrinsic aid, however, this Court is unable to find any interpretation of the Ordinance that allows for lot merger based solely on insufficient frontage without also suggesting several other interpretations. That is the very definition of ambiguity.
Other Justices of the Superior Court have held that insufficient frontage may be adequate grounds for merger, but no merger provision as unclear as the one at issue here has ever been the basis for such a decision. For example, 1988 Warwick Zoning Ordinance section 403.1, the merger provision at issue in Fallon v. Warwick Bd. of Rev.,1996 WL 936948 (R.I. Super. 1996), read as follows:
 Abutting nonconforming lots. I[f] two (2) or more abutting nonconforming lots are held in the same ownership either at the *Page 18 
time of or subsequent to the effective date of this ordinance or any amendment thereto, such lots shall be combined for the purposes of this ordinance in order to conform or more nearly conform to any of the dimensional requirements of this ordinance for the district in which the lots are located and such lots shall not be sold separately. Id. at *1.
Section 403.1 of the 1988 Warwick Ordinance clearly provides for the merger of non-conforming lots in order to conform to any of the dimensional requirements of the ordinance. See id. In contrast, 1967 New Shoreham Ordinance Art. VI, § 1 is a mishmash of terms which are never resolved into any clear set of circumstances under which a merger will occur. Where there is no clear set of circumstances prescribed by the Ordinance, it would be illogical for this Court to compel a result that is neither explicitly provided for by the Ordinance nor sufficiently common as to be implicitly provided for.
In sum, as applied to the merger of lots based on frontage alone, 1967 Ordinance Art. VI, § 1 is ambiguous (1) on its face, (2) in light of the uncommon nature of such mergers, and (3) when contrasted against a clear and unambiguous ordinance provision that calls for the merger of lots based on frontage. Accordingly, this Court must strictly construe Ordinance Art. VI, § 1 in Appellants' favor. See Earle,191 A.2d at 164.
Additionally, policy considerations suggest that the Ordinance must be construed in Appellants' favor. The Court can conceive of no reason that a lot which (1) has some frontage on a public road by its deed description and (2) has access to a public road by way of a private driveway should have to be merged with the lot over which that driveway passes, let alone any other lot. It is commonly recognized that "the principal purpose of the requirement of frontage on a public street is to achieve conformity with the statute found in almost every state, prohibiting the issuance of a building permit for a structure unless there is reasonable access from a street improved to the satisfaction of the planning board, for fire, and other emergency *Page 19 
vehicles." Ziegler, The Law of Zoning and Planning
§ 53:22 at 53-31. Here, the Board does not contend that Lot 2 lacks reasonable access. Therefore, the policy behind requiring the merger of lots with insufficient frontage does not apply. In the absence of a clearly applicable merger provision and the absence of any compelling policy reason to require the merger of these lots, it would be inappropriate for this Court to compel a merger here.
In light of the ambiguity of the merger provision at issue here, this Court must strictly construe Ordinance Art. VI, § 1 in favor of the landowners and hold that no merger occurred. See Earle,191 A.2d at 164. Accordingly, at all relevant times the Property has been comprised of three lots as defined by the stone walls discussed above. Because the Property is and at all relevant times has been comprised of three lots, the Board's determination that the Property was illegally subdivided into those same three lots was affected by error of law and was prejudicial to Appellants. Accordingly, this Court now reverses the Board's Decision and holds that the transfer of Lots 1 and 2 did not constitute an illegal subdivision.
 IV Conclusion
The Board is incorrect in arguing that the Property was only ever a single Lot. Appellants are correct in arguing that the Property is comprised of three lots defined by stone walls. The Board is incorrect in arguing that the three lots merged pursuant to the 1967 Ordinance. Because the Property is and at all relevant times has been comprised of three lots, Appellants' unauthorized transfer of Lots 1 and 2 did not constitute an illegal subdivision. Accordingly, this Court now upholds Appellants' appeal and reverses the Board's Decision.
Counsel for Appellants shall submit an order within ten days.
[1] The deeds in question also describe the lot by metes and bounds, but this description is not strictly relevant to the discussion that follows.
[2] For purposes of the facts section of this Decision, the term "lot" is used for convenience only and carries no legal significance.
[3] The Board contends that Lot 2 lacks frontage entirely. The deed to Lot 2, however, describes the lot as bounded "southerly by Cooneymus Road. . . ." The deed also refers to "that certain unrecorded Survey Plan Showing 3 Adjoining Lots of Land Owned by the Estate of Dorothy A. Hutchinson by Steven M. Pinch P.L.S., January, 2008." Reference to that plan similarly demonstrates that Lot 2 fronts on Cooneymus Road.
[4] The Board argues that Appellants cannot now argue that the Property is comprised of three distinct Lots because they previously submitted a subdivision application. However, Appellants' earlier subdivision application does not constitute an admission that the Property is comprised of only one lot. The application does acknowledge that the Property is identified as Tax Assessor's Plat 16, Lot 11, but a tax assessor's designation is not controlling of what constitutes a lot. Furthermore, Appellants note that their application would have reconfigured the lots in a manner inconsistent with the stone walls on the Property. Accordingly, the Board's argument must fail.
[5] The Board argues that the Court should look to the more specific metes and bounds description in the deed and ignore the reference to three lots. However, because this Court must presume that each provision of the deed is intended to have some effect, the relevant question is not whether to ignore the reference to three lots but rather how to construe that same reference. See
23 Am. Jur. 2d Deeds § 198 at 206-07.
[6] This implicit conclusion may be determined by looking to paragraphs 14, 17, 18, and 24 of the Board's Decision.
[7] Although the Board's Decision makes reference to Article IV, § 2, the parties' briefs and the Appendix F to the Board's memorandum of law indicate that Article VI, § 1 is the operative provision. Because the parties so argue, and because the language of Article VI, § 1 tracks the language quoted in the Board's Decision, this Court will treat Article VI, § 1 as the operative provision.
[8] In that case, the provision at issue — Jamestown Ordinance Article 4, § 406 — provided that "No lot area, shall be so reduced that yards, total area, and lot width shall be less than prescribed for the district in which the lot is located." See 560 A.2d at 355. Article 4, § 406 further provided that "Where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this ordinance which was a lot of record on the effective date of this Ordinance may be used for a single family dwelling." See id.
[9] Appellants argue that the plain language of Article VI, § 1 makes no reference to merger, but only prohibits reducing lots in such a way as to bring them out of compliance with the Ordinance. Although this argument is persuasive, the Court is constrained by the decision of the Supreme Court in R.J.E.P. Associates. See560 A.2d at 355.
[10] Although the Supreme Court in R.J.E.P. Associates,560 A.2d at 355 found a nearly identical ordinance provision to be unambiguous, the Court did so with respect to a merger on the grounds of insufficient lot size. Here, the Board relies on insufficient frontage in arguing that a merger occurred. For reasons explained further below, this Court holds that 1967 Ordinance Art. VI, § 1 is ambiguous on the issue of whether insufficient frontage provides grounds for a merger.
[11] It is possible to construe the Ordinance as requiring merger where a lot area is less than 90,000 square feet, as the area of Lot 3 is here. However, the parties are in agreement that "the lot would not trigger the merger provision, provided it had the minimum of 20,000 square feet." (Board's memorandum at 17.) Because it is undisputed that the area of each lot is greater than 20,000 square feet, insufficient area cannot provide grounds for merger here. The Board does make reference to the alleged failure of the Lots to comply with the yard requirements, but does not explain how the Lots fail to comply with the yard requirements. Absent any such explanation, and absent any Board finding on this issue, the Court cannot proceed to address the Board's contention.